# In The United States District Court
# For The Western District of Massachusetts

| | |
|---|---|
| Michael John Gedeon,<br>        PLAINTIFF<br><br>v.<br><br>DeMatteo Construction Company, and<br>Carpenters Local Union #108,<br>        DEFENDANTS | CIVIL ACTION NO.: 04-30162-KPN |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Plaintiff, pro se, and alleges as and for his complaint against defendants as follows:

1. On April 27, 2004, Plaintiff engaged in protected activity under M.G.L. Chapter 151B, and Title VII of the Civil Rights Act of 1964, as amended, by filing a charge of discrimination on the basis of race upon his race (Black), age (50), and national origin (West Indian) against his former employer DeMatteo Construction Company and his union Carpenters Local Union #108 to the Massachusetts Commission Against Discrimination (MCAD)..

2. Plaintiff removed his complaint from MCAD on August 20, 2004 and now files his discrimination claim with this Court and charges the Defendants with discrimination on the basis of race, national origin and age and retaliation for filing a claim with the MCAD on April 27,. 2004.

3. The suit seeks relief from the clear and purposeful deprivation of the Plaintiff Michael John Gedeon (hereinafter "Plaintiff") age 50, is an African-American male who resides at 1502 Bay Street, Springfield, Hampden County, Massachusetts.

4. Defendant M. DeMatteo Construction Company (hereinafter "Defendant DeMatteo) is a company that is located at 131 Messina Drive, Braintree, Massachusetts.

5. Defendant Carpenters Local Union #108 (hereinafter "Defendant Carpenters Union") is a company that is located at 29 Oakland Street, Springfield, Hampden County, Massachusetts.

6. This is an action to vindicate violations of the Plaintiff's civil rights and to redress the unlawful and discriminatory conduct based on labor organizing, and discriminatory employment practices of the Defendants. This action arises out of the illegal and wrongful discharge of Plaintiff on or about December 5, 2003. Plaintiff alleges that he was terminated from his employment based, in whole or in part, upon his race (African-American), age (50), and national origin (West Indian) in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. Section(s) 2000e et seq., and the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981.

## JURISDICTION AND VENUE

7. This action arises under Article IV, Section 4 of the **United States** Constitution, 42 U.S.C. §1983.
8. This **Court** has **jurisdiction** of this claim under, and by virtue of, 28 U.S.C. §§1331, 2201-02.
9. **Venue** is proper under 28 U.S.C. §1391 (b). Each and all of the acts alleged herein were done by the Defendants, in the **District** of **Massachusetts.**

## STATEMENT OF THE CASE

10. This is an employment discrimination complaint alleging a continuing series of discriminatory conduct against Plaintiff because of his upon his race (Black), age (50), and national origin (West Indian) and because of his having complained about unlawful discrimination and participated in formal proceedings to protest such unlawful discrimination.

11. Plaintiff seeks a declaration that the acts of the Defendants intentionally and unlawfully discriminated against him because of his upon his race (Black), age (50), and national origin (West Indian) and in retaliation for opposing such discrimination practices.

12. Plaintiff sought employment with Defendant DeMatteo since March 2002.

13. Plaintiff had applied for positions with several construction companies in the Western Massachusetts are. Plaintiff did not receive employment with any construction company he had applied with.

14. Plaintiff had always received good evaluations with his previous construction company employers,

15. Plaintiff filed complaint against Defendant Carpenters Union with the EEOC in 2002. Investigations were conducted at that time until Spring of 2003. At that time, EEOC issued a right to sue letter giving him until December 2, 2003 to file a discrimination complaint against the Defendant Carpenters Union in this Court.

16. Plaintiff was one of the first individuals to list his name for employment with Defendant DeMatteo to work at its East Columbus Ave job site on March 2002.

17. On or about April 21, 2003, Plaintiff was hired by Defendant DeMatteo without union support, as a minority carpenter in order to meet its minority hiring requirements.

18. On or about June 27, 2003, Plaintiff was laid off by Defendant DeMatteo.

19. On or about July 21, 2003, Plaintiff was rehired by Defendant DeMatteo

20. On or about September 12, 2003, Plaintiff was again laid off by Defendant DeMatteo.

21. On or about October 14, 2003, Plaintiff was rehired by Defendant DeMatteo.

22. As a result of the Defendant DeMatteo's unlawful and discriminatory conduct and employment practices and violations of Plaintiff's rights protected by federal and state law, Plaintiff was laid off/discharged from his employment with Defendant DeMatteo on or about December 5, 2003

23. Plaintiff received a letter dated January 28, 2004 from Defendant DeMatteo stating that Plaintiff was being laid off due to lack of work.

24. Plaintiff asserts that the January 28, 2004 letter is a pretext for Defendants unlawful discriminatory and retaliatory reasons to lay Plaintiff off.

25. Plaintiff asserts that the reason Defendant DeMatteo laid him off due to retaliation of filing a claim of discrimination with the EEOC. The EEOC gave Plaintiff a right to sue letter against Defendant Carpenters Union. by December 2, 2003. Since the Plaintiff filed an EEOC claim, he has been a victim of harassment and violence by his foreman. Plaintiff reported to his Steward that Plaintiff had been a victim of harassment. Since reporting these incidences to his Plaintiff's Steward Plaintiff has been the subjected to the following:

    a. Plaintiff's foreman Adam deliberately and repeatedly stepped on Plaintiff's foot on the jobsite.
    b. Plaintiff's foreman repeatedly pushed Plaintiff on the jobsite.
    c. The shop steward repeatedly parked his car too close to Plaintiff's driver's side door thereby preventing Plaintiff from entering his car though his driver's door. This action was unnecessary as there were always plenty of empty parking spaces available.
    d. Plaintiff has been left to work in the pouring rain while other workers were told to take cover out of the rain.

26. As a result of reporting incidences of violence and harassment to his Steward Steven Carrington, and Superintendent Richard E. Masucci, Plaintiff was been laid off.

27. Since being laid off by Defendant DeMatteo, Plaintiff received a letter dated January 28, 2004 indicating that Plaintiff would be rehired in the Spring.

28. Since filing a MCAD complaint, Plaintiff have been subjected to the following adverse actions:

    I. When Plaintiff was laid off, another white employee was laid off at the same time. However, on or about April 13, 2004, it was brought to Plaintiff's attention that this same white employee, Pat Valve, was hired by Simon James and was working 7-12 hour day shifts at Vermont Yankee Nuclear Plant.
    II. Plaintiff asserts that one can only obtain employment at Vermont Yankee Nuclear Plant if referred by Defendant Carpenters Union. Therefore, Pat Valve, a white male, was given preference by the Defendant Carpenters Union over Plaintiff, a black male.
    III. During Plaintiff's employment with Defendant DeMatteo, he has been continuously harassed by Defendant DeMatteo's management and employees; and by Defendant Carpenters Union Steward because of the his race (Black), age (50), and national

origin (West Indian).

IV. Plaintiff alleges that Defendant Carpenters Union conspired with Defendant DeMatteo to retaliate against him for filing prior discriminatory claims against Defendant Carpenters Union. Plaintiff has been the subject of strong verbal and physical aggression and violence by Defendants on the job site.

V. Plaintiff asserts that Defendant Carpenters Union prevented Plaintiff from receiving employment with other construction companies, thereby blackballing Plaintiff due to his filing a discrimination complaint with the EEOC in the year 2002.

VI. Plaintiff was falsely instructed by Defendant Carpenters Union to pay his union dues one year in advance which is against Defendant Carpenters Union rules/by laws.

VII. Plaintiff was falsely informed that Defendant DeMatteo would recall Plaintiff back to work in April 2004. To date Plaintiff has not been recalled to work.

VIII. On or about December 5, 2003, Plaintiff placed his name on Defendant Carpenters Union layoff availability sheet. On or about February 28, 2004 Defendant Carpenters Union's Business Agent Simon James told Plaintiff that it did not know that Plaintiff was available for work and that Plaintiff's name was not on the list of available workers on February 28. 2004.

IX. Plaintiff spoke with Business Agent Simon James for approximately three hours on February 28, 2004 and Plaintiff was never told that Plaintiff has been suspended from the Union. Plaintiff remembers the meeting between him and Simon James vividly because February 28th was the day on or about Simon James' birthday.

X. Plaintiff was the subject of "horse play" by Defendant DeMatteo's foreman Adam causing Plaintiff to fall into a three to four feet trench on the job site. When Plaintiff reported the incident to Defendant DeMatteo's foreman and Defendant Carpenters Union's steward, the response was as if the incident was a funny story.

XI. Certain corrections have been made:
   a. State Contracting Awarding Agents have visited the job site and office since Plaintiff's MCAD complaint was filed on April 27, 2004.
   b. Plaintiff's job has been filled by a younger white female worker.
   c. Minority Hiring has been increased to meet some of the minority hiring quota in order to abide by the contract agreement that has been in violation for one year.
   d. Plaintiff was the oldest carpenter employee on the job site.
   e. Plaintiff's position has been filed by a much younger employee.
   f. Defendant DeMatteo has refused to hire Plaintiff despite Plaintiff's in person visits and requests to return to work between January 28, 2004 and April 29, 2004.
   g. Defendant Carpenters Union failed to fairly and properly negotiate on Plaintiff's behalf in placing him on construction job site along with three other white male employees when it reopened on January 28, 2004. Three white male employees (Adam, Troy and Steve) were rehired by January 28, 2004.

### SHOWING OF PRIMA FACIE CASE

29. The plaintiff bears the initial burden of establishing a prima facie case of Title VII discrimination. McDonnell Douglas, 411 U.S. at 802. Plaintiff asserts that he has made a Prima Facie showing under the burden-shifting structure set forth in McDonnell to establish a showing of reprisal. Plaintiff must allege and prove that: 1) he engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link existed between the protected activity and the adverse employment action. McDonnell Douglas

30. Plaintiff asserts that he had met the burden of establishing a prima facie case under McDonnell. (1) Plaintiff is a Black male, of Caribbean descent and age 50; (2) Plaintiff was fired by his employer and thus blackballed by Defendant Carpenters Union from obtaining employment with other construction companies including Eastern Contractor of Braintree, MA, Eastern General of Springfield, Ma, Save On Walls of New Hampshire, A.R. Green of Holyoke, Fountain Brothers of Springfield; FAFER Construction of Connecticut and (3) Plaintiff was fired from the workplace due to retaliation for reporting incidences of harassment and violence on the worksite; and (4) Plaintiff was replaced by a younger white female worker

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, as determined by his individual facts as specified herein, and in recognition of the depraved and outrageous conduct of Defendants, respectfully requests the following relief to be entered against all Defendants

General and specific compensatory damages (including pain and suffering) in the amount of Thirteen Million Dollar (13,000,000.00); Punitive damages in the amount of Thirty-nine Million Dollars ($39,000,000.00).

Costs of this suit; and

Such further relief as the Court may deem just and proper.

**PLAINTIFF REQUEST A JURY TRIAL**

**DATE: AUGUST 20, 2004**

*THIS IS ALL ABOUT MY JOB, MY JOB EQUAL EMPLOYMENT FAIRNESS, TRUTH TO LIES, HEAD TO HEAD. M.G.*

Respectfully submitted,

**MICHAEL JOHN GEDEON**
PRO SE LITIGANT
1502 Bay Street
Springfield, MA 01109