off the board. And eventually I lost my balance and fell in this four foot hole. And I fell – I could have been hurt in there. So that kind of – that kind of environment." (Statement of Facts par. 65)

### Spitting Incident

Gedeon alleges that LaVoie spit in the vicinity of his foot while working on the job site. When questioned Gedeon testified: "while I was working on the job, at the bottom of the ramp, Adam and Troy was working. And, they were down and I was standing – I think I was either putting some nails into a two by four, bracing up – bracing up the wall, and the two of them stood right there working. And he goes an he spits. And he spits right to my foot ….. Two or three inches from my foot…. Troy is laughing. I didn't think it was funny" (Statement of Facts par. 66)

### Cologne Incident

Gedeon alleges that LaVoie entered the room where Gedeon and other workers were sitting and states that "something smells around here". (Statement of Facts par.   P. 135). When questioned Gedeon testified: "But I didn't' pay any attention , cause I have – it's an oil." When questions about the oil Gedeon testified: "it has a very loud smell to it, especially if the wind is blowing… it's a nice oil … but some people can't take – odors like that." (Statement of Facts par.   P. 135-136).

### Rain Incident

Gedeon alleges that he was directed to work in the rain while others were allowed to work under cover. When questioned, Gedeon testified: "He [LaVoie] would just let us stay out there and get wet, and not even say, 'Well, guys to underneath the bridge." (Statement of Facts

21

par. 67)

Longacre Incident

When questioned about the alleged conduct of Longacre, Gedeon stated: "I hardly worked with Troy, because Troy showed me that he – didn't want to work with me. He had this thing about me. .. His partner was mainly Steve Carrington or he wanted to do things by himself. …When I wanted to work with him, help him or something like than, he would kind of like shush me up, like, you know, he – he don't need help" (Statement of Facts par. 68)

Although DeMatteo Construction denies Plaintiff's allegations, even when viewed in the light most favorable to Plaintiff, there is no evidence that the actions as alleged were in retaliation for Gedeon filing a claim with the EEOC against Local 108. Moreover, in consideration of the small number of identifiable incidents which Mr. Gedeon constituted harassment, the ambiguous nature of these incidents and the lack of credible evidence to show the incidents were, in fact, retaliatory, this Court, as a matter of law, may find that no determination can be made that Mr. Gedeon suffered harassment and abuse that was sufficiently severe to be actionable. *See* Cuddyer v. Stop & Shop Supermarket Co., 434 Mass 521, 532 (2001). Whether the harassment was severe or pervasive "must be answered by reference to 'all circumstances' including the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 18 (1st Cir.2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367 (1993)). Rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim. Noviello v. City of Boston 398 F.3d 76 (1st Cir. Mass 2005), *See* Mannatt v.

22

Bank of Am., 339 F. 3d 792, 803 (9ᵗʰ Cir. 2003). "The antidiscrimination laws were not enacted to create or enforce a 'general civility code.'" Noviello 398 F.3d at  , *quoting,* Onacle v. Sundower Offshore Servs., Inc. 523 U.S. 75, 80, 118 S.Ct. 998 (1998).   The sum total of the conduct directed at Gedeon was not sufficiently severe or pervasive that it can be said to have altered the conditions of his employment.  In fact, as evidenced by Gedeon's own testimony it appears that most of the incidents were not even subjectively offensive.

Mr. Gedeon failed to disclose the alleged "spitting" incident in his initial charge of discrimination filed with the Massachusetts Commission Against Discrimination ("MCAD") because at the time he chose to ignore it.  (MCAD Complaint attached as Exhibit D).   At his deposition Gedeon testified that there were other matters more important to him. (Tr.II pp. 19-20 Exhibit C).  Gedeon failed to include the alleged "spitting" incident in the Complaint filed in this action.  When questioned about this Gedeon testified that he didn't think that it was important to him at the time. (Statement of Facts par. 87)  Gedeon did not disclose the alleged cologne incident in his complaint filed at the MCAD. ( Exhibit D) When questioned Gedeon testified that he didn't include it because he thought that it was funny. (Statement of Facts par. 88).  Gedeon did not allege the pushing/bumping incidents, the stepping incident, the parking incident or the rain incident in his MCAD complaint. ( Exhibit D) DeMatteo Construction contends that these matters were not identified because they either did not occur or they occurred in the regular course of work on a construction job site and were neither objectively nor subjectively offensive.   In fact the only incident alleged by Gedeon in his MCAD complaint was the incident of "horseplay". (Exhibit D).  The fact that Gedeon may have been offended by the foreman's conduct, i.e., one incident of "horseplay" does not warrant a finding of retaliatory harassment.

Moreover, the extent of the "horseplay" is questionable. In his complaint filed at the MCAD, Gedeon alleged that he was caused to fall into a four <u>inch</u> trench. (Exhibit D).  In his complaint in this action the depth of the ditch was increased to three to four feet.

### 3. Liability

Once harassment is established liability of the defendant differs under state and federal law depending on whether the alleged harasser was a co-worker or a supervisor of the alleged victim.  Under both federal and state law, where the harassment is by a non-supervisory co-worker, the employer is liable only if the plaintiff can show that the employer "knew or should have known of the charged ….. harassment and failed to implement prompt and appropriate action." <u>Crowley v. L.L. Bean, Inc.</u>, 303 F. 3d 387, 401 (1st Cir. 2002) (*quoting* <u>White b. N.H. Dep't of Corr.</u>, 221 F.3d 254, 261 (1st Cir. 2000).

Similarly, under Title VII or chapter 151B, when a supervisor creates a hostile work environment, the employer is vicariously liable.  Under Title VII, however, where no tangible employment action is taken an employer may raise an affirmative defense to liability. <u>Arieta-colon v. Wal Mart Puerto Rico, Inc.</u>, 434 F.3d 75, 82 (1st Cir, 2006) (tangible employment action defined as discharge, demotion, undesirable reassignment).  See, <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 765, 118 S.Ct. 2257 (1998) (tangible employment action recognizing such defense defined as significant changes in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibility or a decision causing a significant change in benefits).  In order to prevail on its affirmative defense, the employer must show that (1) it "exercised reasonable care to prevent and correct promptly" the harassment and (2) the employee "unreasonably failed to take advantage of any preventive or corrective

24

opportunities provided by the employer to avoid harm otherwise." Ellerth, 524 U.S. at 765, 118

S.Ct. 2257.    This same affirmative defense is not available to defendant under chapter 151B and

an employer will be held vicariously liable for the actions of its supervisors. College-Town, div.

of Interco, Inc. V. MCAD, 400 Mass. 156, 162-69 (1987).

Gedeon alleges harassment primarily by LaVoie and to a lesser extent by Carrington and

Longacre.    It is undisputed that Carrington and Longacre were co-workers of Gedeon and had

no supervisory authority over him. (Statement of Facts par. 11 and 17) At some time Gedeon

allegedly informed Masucci that Carrington parked his car to close to his making it difficult to

get into the driver's side. (Statement of Facts par. 74).    After Gedeon allegedly spoke to

Masucci about this issue, Carrington did not park close to Gedeon's car again. (Statement of

Facts par. 75).    Gedeon never spoke to Masucci about Mr. Longacre 's alleged conduct toward

him or any other alleged conduct relating to Mr. Carrington.    (Statement of Facts 78) Gedeon

cannot show that DeMatteo Construction knew or should have know of the charged harassment

by co-workers and failed to implement prompt and appropriate action.

It is also undisputed that LaVoie was foreman on the job site exercising limited

supervisory authority over Gedeon and other workers. (Statement of Facts par. 18) It is also

undisputed, however, on or about June 16, 2003, Gedeon spoke to Masucci about LaVoie's

conduct. (Statement of Facts par. 70).    Masucci spoke to LaVoie on June 17, 2003, about Mr.

Gedeon's allegations. (Statement of Facts par. 71). Gedeon alleges that he spoke to Masucci

about the alleged stepping on his foot, spitting close to his foot, reference to the cologne and

working in the rain. (Statement of Facts par 72). Subsequent to Gedeon informing Masucci about

these allegations Masucci repeatedly walked the job site and asked Gedeon, "Is everything all

right, Mike?"(Statement of Facts par.73).    Gedeon responded, "I tell him yes." (Statement of

25

Facts par. 73). In fact, Gedeon testified that after speaking to Masucci the environment on the job site improved. (Statement of Facts par. 74)

As set forth above, DeMatteo Constructions exercised reasonable care to prevent and promptly correct the alleged harassment. DeMatteo is not liable for LaVoie's conduct pursuant to Title VII.

### CONCLUSION

For the reasons set forth more fully above, Defendant, DeMatteo Construction Company requests that this Court issue a judgment in its favor as to all claims set forth by Plaintiff in this matter.

Respectfully submitted,

DEMATTEO CONSTRUCTION
COMPANY

By its attorney,

Suzanne B Matthews, Esq.
BBO #545284
742 Washington Street
P.O. Box 501
Canton, MA 02021
781-828-0989

4/6/06

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the
above document was served upon the attorney of
record for each party by First Class Mail.
Date: 4/7/06
Suzanne B. Matthews

26