UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL JOHN GEDEON, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| V. ) | Civil Action No.: 04 30162 KPN |
| ) | |
| DEMATTEO CONSTRUCTION ) | |
| COMPANY, AND ) | |
| CARPENTERS LOCAL UNION #108, ) | |
| ) | |
| DEFENDANTS ) | |

## AFFIDAVIT OF RICHARD E. MASUCCI

I, Richard E. Masucci, hereby depose and state as follows:

1.  I am employed by DeMatteo Construction Company (DeMatteo Construction") as the Project Manager at the I-91 on-ramps and off-ramps construction project in the area of Broad Street to State Street in Springfield, MA (Springfield Project"). The information contained in this affidavit is based upon my own personal knowledge. To the extent that any information is presented upon information, I received it from reliable sources and believe it to be true.

2.  DeMatteo Construction, a general contracting firm based in Braintree, Ma. was awarded a contract by the Massachusetts Highway Department (MHD) to construct certain revisions to the on-ramps and off-ramps to I-91 in the area of Broad Street to State Street in Springfield, MA. ("Springfield Project").

3.  The date of Contract Award was April 10, 2002, and the Notice to Proceed date was May 24, 2002. (Notice of Contract Award attached as Exhibit A-1, Notice to Proceed attached as Exhibit A-2).

4.  As Project Manager, I am responsible for all hiring decisions.

5.  As Project Manager, I am identified to employees as the site contact person for all complaints of discrimination or harassment.

6.  The contract with MHD requires that DeMatteo Construction provide on-the-job

training aimed at developing six (6) full journeymen in the type of trade or job classification involved. (Trainee Special Provisions and related documents attached as Exhibit A-3).

7. Training and upgrading of minorities and women toward journeyman status is a primary objective of the Training Special Program. (Exhibit A-3).

8. The contract with MHD requires that the minority employee percentage goal of not less than 10% and the female percentage goal of 6.9 % per trade be applied to the Springfield Project by DeMatteo Construction. (Exhibit A-4).

9. On June 7, 2004, DeMatteo Construction was notified by MHD that as of that date, it had failed to achiece compliance with the female work hour goal. DeMatteo Construction was directed by MHD to submit a plan indicating how the goal would be met.

10. In accordance with the bargaining agreement between DeMatteo Construction and Local 108, DeMatteo Construction is obligated to hire a Shop Steward appointed by the union. (Excerpt of Bargaining Agreement attached as Exhibit A-5).

11. In accordance with the same bargaining agreement, the Shop Steward has no authority to hire, fire, refer or supervise employees on the job site. (Exhibit A-5).

12. DeMatteo Construction moved onto the Springfield Project site in June 2002. Shortly thereafter, problems with the design of major elements of the work were realized. The design deficiencies included objections raised by the Springfield Water and Sewer Commission relating to proposed work on East Columbus Avenue. The redesign of significant elements of the work continued throughout the project. Despite DeMatteo Construction's effort to advance the project, and after nearly four years of work on the site, at all times material hereto the project was significantly behind schedule. (Exhibit A-6).

13. At all times relevant hereto, DeMatteo Construction employed a limited number of carpenters for work on the Springfield Project. The carpenters employed included two long term employees, Adam LaVoie and Troy Longacre, and eight new employees, Steven Carrington, Patrick Falvey, Michael Gedeon, Marci Dineen, Eric Headley, William Johnson, Patrick Paul and Michael Sullivan. (Employee Profile attached hereto as Exhibit A-7).

14. At all times relevant hereto these carpenters were laid off, rehired and transferred on numerous dates as follows:

|  | Hire/Rehire/Transfer | Layoff |
|---|---|---|
| Adam LaVoie Foreman, white Age: 43 | 10/28/02 | 12/19/03 |
|  | 1/19/04 | 2/27/04 |
|  | 3/15/04 | 12/24/04 |
|  | 3/28/05 | 9/9/05 |

|                                                              |                                   |                                             |
| ------------------------------------------------------------ | --------------------------------- | ------------------------------------------- |
|                                                              |                                   | (resigned)                                  |
| <u>Troy Longacre</u><br>Journeyman, white<br>Age: 39         | 4/21/03                           | 6/27/03                                     |
|                                                              | 7/14/03                           | 9/12/03                                     |
|                                                              | 10/06/03                          | 12/05/03                                    |
|                                                              | 1/19/04                           | 2/27/04                                     |
|                                                              | 3/15/04                           | 12/23/04                                    |
|                                                              | 4/27/05                           | 12/16/05<br>(assigned to Braintree, MA)     |
|                                                              | 3/6/06                            |                                             |
| <u>Steven Carrington</u><br>Journeyman<br>Shop Steward, white<br>Age: 30 | 1/21/03               | 6/27/03                                     |
|                                                              | 7/14/03                           | 12/19/03                                    |
|                                                              | 1/19/03                           | 2/27/04                                     |
|                                                              | 3/15/04                           | 6/14/06<br>(reassigned by local 108)        |
|                                                              | 8/23/04<br>(returned as Steward)  |                                             |
|                                                              | 12/23/04                          |                                             |
| <u>Patrick Falvey</u><br>Apprentice/Trainee<br>White, Age: 51 | 11/12/02                         | 11/22/02                                    |
|                                                              | 1/21/03                           | 6/27/03                                     |
|                                                              | 7/14/03                           | 9/12/03                                     |
|                                                              | 10/06/03                          | 12/05/03                                    |
|                                                              | 5/17/04                           | 12/23/04                                    |
|                                                              | 3/28/05                           | 7/8/05                                       |

|                                                                                  | 9/12/05  | 12/2/05  |
|----------------------------------------------------------------------------------|----------|----------|
| Michael Gedeon<br>Journeyman, black<br>Age: 52                                   | 4/21/03  | 6/27/03  |
|                                                                                  | 7/14/03  | 9/12/03  |
|                                                                                  | 10/14/03 | 12/5/03  |
| Marci Dineen<br>Apprentice/Caucasian<br>Age:35                                   | 6/14/04  | 11/12/04 |
|                                                                                  | 4/11/05  | 6/24/05  |
|                                                                                  | 3/27/06  |          |
| Eric Headly<br>Carpenter/Steward/Black<br>Age 48                                 | 7/14/04  | 8/23/04  |
| William Johnson<br>Carpenter/Steward/Black<br>Age:                               | 4/28/05  | 12/2/05  |
|                                                                                  | 3/13/06  |          |
| Patrick Paul<br>Carpenter/pile Driver/<br>Journeyman/Caucasian<br>Age: 43        | 11/7/05  | 12/2/05  |
| Michael Sullivan<br>Carpenter/Journeyman/<br>Caucasian<br>Age: 54                | 4/3/06   |          |

(Employee Profile attached hereto as  Exhibit A-7).

     15. Adam LaVoie a foreman with DeMatteo Construction worked for the company for

14 years. Mr. LaVoie was transferred to the Springfield Project on October 28, 2002.

     16. Mr. Falvey was hired as a carpenter trainee/apprentice on November 12, 2002.

     17. Mr. Carrington was appointed by Local 108 as Shop Steward for the Springfield

Project and was hired as a journeyman on January 21, 2003.

18. Mr. Longacre has worked for DeMatteo Construction since 1999. Mr. Longacre was transferred to the Springfield Project on April 21, 2003.

19. Mr. Gedeon was hired as a journeyman on April 21, 2003. Mr. Gedeon had no prior work experience with DeMatteo Construction.

20. As indicated above between October 2002 and December 3, 2005, all carpenters were repeatedly laid off and rehired.

21. Lay offs between June 27, 2003 – December 5, 2003 were not on the basis of race, national origin or age.

22. All lay offs were the result of lack of work.

23. Employees were re-hired on the basis of seniority and contractual obligations with MHD and Local 108.

24. As work increased in January 2004, DeMatteo re-hired three carpenters: Adam LaVoie, foreman who had been employed by the company of twelve years; Troy Longacre, journeyman who had been employed by the company for approximately five years and Steven Carrington, Shop Steward were re-hired on January 19, 2004.

25. On or about January 28, 2004, Mr. Gedeon contacted me and informed me that he was in the process of applying for a mortgage and requested that I provide him with a letter indicating his employment history and that he had been laid off as a result of lack of work on the project.

26. I provided Mr. Gedeon with such a letter dated January 28, 2004. (Exhibit A-10).

27. Messrs. LaVoie, Longacre and Carrington were again laid off on February 27, 2004 and re-hired and laid off on subsequent times thereafter.

28. Mr. Gedeon was not similarly situated to Messrs. LaVoie, Carrington and Longacre in terms of qualifications and other differentiating or mitigating circumstances that distinguishes their situations.

29. Patrick Falvey, apprentice journeyman was re-hired on May 17, 2004 and subsequently laid off and re-hired on several occasions.

30. Mr. Gedeon was not similarly situated to Ms. Falvey in terms of qualifications and other differentiating or mitigating circumstances that distinguish their situations.

31. On June 14, 2004, DeMatteo Construction hired a female apprentice carpenter in accordance with the terms of its contract with MHD.

32. Mr. Gedeon was not similarly situated to Ms. Dineen in terms of qualifications and other differentiating or mitigating circumstances that distinguish their situations.

33. Eric Headley was appointed by Local 108 as Shop Steward for the Springfield Project and was hired as a carpenter on July 14, 2004.

34. Mr. Gedeon was not similarly situated to Mr. Headley in terms of qualifications and other differentiating or mitigating circumstances that distinguish their situations.

35. Mr. Johnson was appointed by Local 108 as Shop Steward of the Springfield Project and was hired as a carpenter on April 28, 2005.

36. Mr. Gedeon was not similarly situated to Mr. Johnson in terms of qualifications and other differentiating or mitigating circumstances that distinguish their situations.

37. Mr. Gedeon was offered continued employment with DeMatteo Construction on November 2, 2005. Mr. Gedeon declined the opportunity to return to work at DeMatteo Construction. Mr. Gedeon informed DeMatteo Construction that he was working elsewhere.

38. Mr. Paul was hired as a journeyman carpenter on November 7, 2005. Mr. Paul was

hired to fill the position that Mr. Gedeon was offered on November 2, 2005 but declined to accept.

39.    In March 2006, Mr. Gedeon was again offered the opportunity to return to work at DeMatteo Construction. Mr. Gedeon accepted the offer of employment and returned to work with DeMatteo Construction on March 27, 2006.

40.  Mr. Sullivan was hired on April 3, 2006, subsequent to Mr. Gedeon's re-hire. (Exhibit A-7).

41.  DeMatteo Construction's decision to rehire any of the carpenters rather than Mr. Gedeon was not motivated by race, national origin or age.

42.  When faced with a lay off/re-hire  decision, it is DeMatteo Construction's policy to lay off similarly situated employees on the basis of their employment history with the company, i.e., last hired, first laid off.  (Masucci Affidavit Exhibit A).

43.  In the case at issue, at all times relevant hereto Mr.  Gedeon was the last to be hired by DeMatteo Construction.  Consistent with company policy Mr. Gedeon was one of the first to be laid off.

44.  The failure of DeMatteo Construction to re-hire Mr. Gedeon between December 5, 2003 – March 27, 2006 was not based on Mr. Gedeon's race, national origin or age.

45.  The failure of DeMatteo Construction to re-hire Mr. Gedeon between December 5, 2003 – March 27, 2006 was based on legitimate hiring practices and not in retaliation for Mr. Gedeon filing a claim with EEOC against Local 108.

46.  During all times relevant hereto, April 21, 2003 – December 5, 2003, Messrs. Gedeon LaVoie, Longacre, Carrington, Falvey and Masucci were working at the Springfield project.

47. During the regular course of my employment at Project Manager I regularly make diary entries about events that occur at work. On or about June 16, 2003, Mr. Gedeon came into my office and informed me that he had filed a complaint with EEOC against Local 108 for discrimination and harassment. Mr. Gedeon further informed me that he had noticed a change in attitude of his fellow workers toward him since a recent visit to the job site by Simon James, Business Agent Local 108. He cited comments, physical actions and horseplay as instances which his fellow workers engaged in what he perceived to be an effort to goad him into a confrontation. I told him that I would address the situation with the foreman, Adam LaVoie. (Copy of diary entry dated June 16, 2003 attached as Exhibit A-8).

48. On June 17, 2003 I spoke to Mr. Lavoie about Mr. Gedeon's allegations. Mr. LaVoie stated that he didn't know about Mr. Gedeon's EEOC claim. Mr. LaVoie stated that he would pay attention to the situation on the job site. (Diary entry dated June 17, 2003 attached as Exhibit A-9).

49. From this date forward I regularly walked the job site to check to monitor the treatment of Mr. Gedeon. On numerous occasions during this time I regularly asked Mr. Gedeon if everything was all right. Mr. Gedeon stated yes. At no time subsequent to June 16, 2003 did Mr. Gedeon inform me of any further problems on the job site.

50. At some time Mr. Gedeon also informed me that Mr. Carrington parked his car to close to his making it difficult to get into the driver's side. I spoke to Mr. Carrington and asked him to make sure that he did not park too close to Mr. Gedeon.

51. Mr. Gedeon did not inform me of any other alleged problems that he was having with Mr. Carrington.

52. Mr. Gedeon did not inform me of any other problems that he was having with any

other workers at the site.

Signed under the pains and penalties of perjury, this 5th day of April 2006.


Richard E. Masucci



Jane Swift
Governor

*April 11, 2002*

Exhibit A-3

*CONTRACT NO. 32211*
*Springfield*                    ### Notice of Contract Award

*M. Dematteo Construction Co.*
*131 Messina Drive*
*Braintree, MA  02184*

*Gentlemen/Madame:*

*At a meeting of the Massachusetts Highway Commission held on April 10, 2002, the contract for Weave Elimination Project on Interstate 91 in the City of Springfield was awarded to you.*

*You are hereby notified that, under the "Notice to Contractors" you will be required within ten days from this date to execute the contract which is now ready for your signature. Pursuant to the Department's Standard Specifications, should you fail to execute the contract and furnish the bonds and certificate of insurance within ten days, the Commission may be asked to determine that you have abandoned the contract, and retain your check as liquidated damages.*

*The contract in duplicate is enclosed. Please sign both copies of the contract and bonds, have the bonds executed by a surety company and return them as soon as possible. Your corporate seal should be attached to both the contract and bonds. Date of contract for above purposes shall be date of your signature. Please insert this date in clause of the contract and on the bonds.*

*AT THE SAME TIME YOU RETURN THE SIGNED COPIES OF CONTRACT AND BONDS, PLEASE RETURN THE ENCLOSED CERTIFICATE FOR WORKER'S COMPENSATION AND LIABILITY INSURANCE REQUIRED FOR THIS CONTRACT. PLEASE NOTE THAT THE EXPIRATION DATE OF YOUR INSURANCE COVERAGE MUST BE ON OR AFTER THE DATE FOR COMPLETION OF THIS CONTRACT.*

*I am also enclosing a suggested form of vote of the board of directors of your company, authorizing the officer who signs the contracts and bonds for your company to do so. There is attached to this vote a certificate showing that said vote is in full force and effect and has not been amended or rescinded. This certificate should be dated the date of your contract and should bear the imprint of your corporate seal. Kindly return the certificate and vote with the copies of the contract.*

*Your attention is called to the fact that the work must not be commenced until you receive your signed copy of the contract. PLEASE NOTE THAT THE TEN DAY LIMITATION PERIOD WILL BE STRICTLY ENFORCED.*

*Very truly yours,*

*Katia Clarke, Acting Secretary*
*Massachusetts Highway Commission*

*KC:cl*
*enc.*

*cc:    Construction*
*        District #2*



Jane Swift
*Governor*

James H. Scanlan
*Acting Secretary*

John Cogliano
*Acting Commissioner*

Exhibit A - Z

May 24, 2002

**CONTRACT NO. 32211**          **NOTICE TO PROCEED**
**Springfield**

**M. Dematteo Construction Co.**
**131 Messina Drive**
**Braintree, MA 02184**

Dear Sir/Madam:

Enclosed is a signed copy of your contract with the Commonwealth, Contract No. 32211 dated April 19, 2002 for Weave Elimination project on interstate 91 in the city of Springfield.

Upon receipt of your signed contract it is incumbent upon you to contact the District Engineer to make the required arrangements before commencing work on this project.

Very truly yours,

Katia Clarke, Acting Secretary
MassHighway Highway Department

KC:mcl
Enc.

CC:    Construction
       District 2
       Resident Engineer
       Construction Contracts
       Utilities

**Completion Date: November 30, 2004**

Exhibit A - 3

DOCUMENT 00875

TRAINEE SPECIAL PROVISIONS

THE REQUIRED NUMBER OF TRAINEES TO BE TRAINED UNDER THIS CONTRACT WILL BE:

SIX (6).

1.  Training

Training shall be provided as follows:

The Contractor shall provide on-the-job training aimed at developing full journeymen in the type of trade or job classification involved.

In the event that a Contractor subcontracts a portion of the contract work, he/she shall determine how many, if any, of the trainees are to be trained by the subcontractor, provided, however, that the Contractor shall retain the primary responsibility for meeting the training requirements imposed by this Special Provision. The Contractor shall also ensure that this training Special Provision is made applicable to such subcontract. Where feasible, 25 percent of apprentices or trainees in each occupation shall be in their first year of apprenticeship or training.

The number of trainees shall be distributed among the work classifications on the basis of the Contractor's needs and the availability of journeymen in the various classifications within a reasonable area of recruitment. Prior to commencing construction, the Contractor shall submit to the State Highway Agency for approval the number of trainees to be trained in each selected classification and training program to be used. Furthermore, the Contractor shall specify the starting time for training in each of the classifications. The Contractor will be credited for each trainee employed by him/her on the contract work who is currently enrolled or becomes enrolled in an approved program and will be reimbursed for such trainees as provided hereinafter.

Training and upgrading of minorities and women toward journeyman status is a primary objective of the Training Special Provision. Accordingly, the Contractor shall make every effort to enroll minority trainees and women (e.g., by conducting systematic and direct recruitment through public and private sources likely to yield minority and women trainees) to the extent that such persons are available within a reasonable area of recruitment. The Contractor will be responsible for demonstrating the steps that he/she has taken in pursuance thereof, prior to a determination as to whether the Contractor is in compliance with this Training Special Provision. This training commitment is not intended, and shall not be used, to discriminate against any applicant for training, whether a member of a minority group or not.

No employee shall be employed as a trainee in any classification in which he/she has successfully completed a training course leading to journeyman status or in which he/she has been employed as a journeyman. The Contractor should satisfy this requirement by including appropriate questions in the employee application or by other suitable means. Regardless of the method used the Contractor's records should document the findings in each case.

The minimum length and type of training for each classification will be established in the training program selected by the Contractor and approved by the State highway agency and the Federal Highway Administration. The State highway agency and the Federal Highway Administration shall approve a program if it is reasonably calculated to meet the equal employment opportunity obligations of the Contractor and to qualify the average trainee for journeyman status in the classification concerned by the end of the training period. Furthermore, apprenticeship programs registered with the U.S. Department of Labor, Bureau of Apprenticeship and Training, or

Commonwealth of Massachusetts

**MASS HIGHWAY**

Massachusetts Highway Department

Project No.  602965-01

with a State apprenticeship agency recognized by the Bureau and training programs approved but not necessarily sponsored by the U.S. Department of Labor, Manpower Administration, Bureau of Apprenticeship and Training shall also be considered acceptable provided it is being administered in a manner consistent with the equal employment obligations of Federal-Aid highway construction contracts. Approval or acceptance of a training program shall be obtained from the State prior to commencing work on the classification covered by the program. It is the intention of these provisions that training is to be provided in the construction crafts rather than clerk-typists or secretarial-type positions. Training is permissible in lower level management positions such as office engineers, estimators, timekeepers, etc., where the training is oriented toward construction applications. Training in the laborer classification may be permitted provided that significant and meaningful training is provided and approved by the division office. Some offsite training is permissible as long as the training is an integral part of an approved training program and does not comprise a significant part of the overall training.

II.  Reimbursement

Under these Training Special Provisions, reimbursement will be as follows:

The Contractor will only be reimbursed 80 cents for each hour of On-the-Job Training as specified in the approved Training Program.

The Contractor is advised and encouraged that he/she may train additional persons in excess of the number specified and will be reimbursed as stated above. Reimbursement will be made even though the Contractor receives additional training program funds from other sources, provided such other source does not specifically prohibit the Contractor from receiving other reimbursement.

If less than the full training specified in the approved training programs is provided, payment to the Contractor will be made at a rate of 80 cents for each hour of training completed under this contract. However, no payment shall be made to the Contractor if either the failure to provide the required training, or the failure to hire the trainee as a journeyman, is caused by the Contractor and evidences a lack of good faith on the part of the Contractor in meeting the requirements of this Training Special Provision.

III.  Payment

Trainees will be paid:

1.   Percentage (%) of the journeyman's rate as provided in the existing programs approved by the Department of Labor or Transportation as of September 15, 1970.

2.   For journeyman programs submitted by the Contractor and approved by the State Highway Department and Federal Highway Administration, at least 60 percent of the appropriate minimum journeyman's rate specified in the contract for the first half of the training period, 75 percent for the third quarter of the training period, and 90 percent for the last quarter of the training period.

3.   For skilled laborer programs, the minimum starting wage rate of unskilled laborer. At the conclusion of training, he/she will be paid the minimum wage rate of the classification for programs submitted by the Contractor and approved by the State Highway Department and Federal Highway Administration.

The Contractor shall provide each trainee with a certification showing the type and length of training satisfactorily completed.

The Contractor will provide for the maintenance of records and furnish periodic reports documenting his/her performance under this Training Special Provision.

M. DeMatteo Construction Co.

MHD Contract No. 32211
I-91 Weave Elimination Springfield

TRAINING PROGRAM

CONCRETE FORMWORK CARPENTER

Each trainee is expected to gain knowledge and experience in each of the following skill areas.
The approximate time spent in each skill area is listed. The total hours for the program is 1000 hours.

1.                        <u>SAFETY</u>                                    150 HOURS

    A.    Awareness of hazards associated with the work
    B.    Use of personal protective equipment
    C.    Use of aerial lifts
    D.    Working at heights-use of harness and lanyards
    E.    Proper ladder setup
    F.    Installation and maintenance of guardrails and toeboards

2.                        <u>GENERAL</u>                                   150 HOURS

    A.    Familiarization with general construction terminology
    B.    Fundamental communication skills
    C.    General rigging principles
    D.    Standard crane tagging signals
    E.    Proper use of tag lines
    F.    Proper use of the tools of the trade
    G.    Material storage
    H.    Site security

3.                        <u>CONCRETE FORMWORK - WALLS</u>                 400 HOURS

    A.    Formwork terminology
    B.    Assembly/disassembly of formwork systems
    C.    Forming footings
    D.    Forming retaining walls
    E.    Setting and plumbing wall forms
    F.    Forming wall bulkheads
    G.    Use of telepoles
    H.    Use of she-bolt, taper tie, and coil tie form tie systems
    I.    Application and maintenance of formliner
    J.    Layout and installation of rustication strips
    K.    Erection and removal of formwork scaffold systems

4.                        <u>CONCRETE FORMWORK - BRIDGE</u>                300 HOURS

    A.    Assembly/disassembly of formwork systems
    B.    Forming pilecaps
    C.    Forming piers
    D.    Forming abutments
    E.    Preparation of bridge seats
    F.    Setting of anchor bolts
    G.    Use of bridge hangers
    H.    Installation/removal of overhang brackets
    I.    Setting of edge forms
    J.    Forming parapets
    K.    Forming diaphragms
    L.    Setting screeds for bridge deck placements

M. DeMatteo Construction Co.

MHD Contract No. 32211
I-91 Weave Elimination Springfield

TRAINING PROGRAM

HEAVY AND HIGHWAY LABORER

Each trainee is expected to gain knowledge and experience in each of the following skill areas.
The approximate time spent in each skill area is listed. The total hours for the program is 1000 hours.

1.                 <u>SAFETY</u>                        150 HOURS

    A.    Awareness of hazards associated with the work
    B.    Use of personal protective equipment
    C.    Use of aerial lifts
    D.    Working at heights-use of harness and lanyards
    E.    Proper ladder setup
    F.    Trench safety

2.                 <u>GENERAL</u>                     150 HOURS

    A.    Familiarization with general construction terminology
    B.    Fundamental communication skills
    C.    General rigging principles
    D.    Standard crane tagging signals
    E.    Proper use of tag lines
    F.    Proper use of the tools of the trade
    G.    Material storage
    H.    Site security

3.                 <u>UTILITY INSTALLATION</u>           200 HOURS

    A.    DIG-SAFE notification
    B.    Pavement sawcutting
    C.    Communication - signaling excavator
    D.    Excavating around existing utilities
    E.    Temporary support of utilities
    F.    Bedding
    G.    Laying and jointing pipe
    H.    Compaction of backfill
    I.    Use of controlled density fill
    J.    Use of road plates
    K.    Pavement restoration

4.                 <u>CARPENTER TENDER - FORMWORK</u>     100 HOURS

    A.    Familiarization with formwork terminology
    B.    Setup of tools/materials for carpenters
    C.    Organization of material storage
    D.    Cleaning of forms and the application of form release agents

5.                 <u>PLACING CONCRETE</u>           400 HOURS

    A.    Communication - proper signals for pump or crane
    B.    Pour setup
    C.    Planning for access
    D.    Locating ready-mix truck and placing device
    E.    Calculating volumes
    F.    Know rate of pour
    G.    Use of concrete vibrator
    H.    Screeding and finishing concrete
    I.    Proper care/cleaning of concrete tools
    J.    Chipping/patching concrete
    K.    Application of bonding agents
    L.    Application of membrane waterproofing and bituminous dampproofing

Commonwealth of Massachusetts **MASS HIGHWAY** Massachusetts Highway Department

Project No. 602965-01

Form FHWA-140, Federal Aid Highway Construction Contracting Semi-Annual Training Report, shall be submitted as per instructions on the Form.

END OF DOCUMENT



131 Messina Drive
Braintree, MA 02184

781-356-7676
fax 781-794-1624

August 16, 2002
Letter No. 2019-MHD-024

Mr. John Hoey, Jr.
Massachusetts Highway Department
811 North King Street
Northampton, Ma 01060

Subject:     Weave Elimination Project on Interstate 91
MHD Contract No. 32211
Federal-Aid Project Number CM-91-1(148)
**Proposed Training Programs**

Reference:     Division I Special Provisions – Trainee Special Provisions

Dear Mr. Hoey:

We have enclosed for your review our proposed training programs for Heavy and Highway Laborers and for Concrete Formwork Carpenters. We intend to satisfy the project requirement of six trainees by employing two laborer trainees and four carpenter trainees. At this time, we plan to satisfy the trainee requirement with M. DeMatteo employees. We do, however, reserve the right to assign responsibility for a trainee to one or more of our subcontractors.

We intend to employ as trainees individuals who are currently enrolled in apprenticeship programs sponsored by the laborers' union and the carpenters' union. The intent of M. DeMatteo's training programs is to enable the individuals to gain experience and knowledge in the different work operations for his/her trade that are involved in this project. Since the scope of work on this project is limited, the programs cannot expose the trainees to each and every skill area that are required by the unions' apprenticeship programs.

Please advise whether or not the proposed training programs are acceptable. Please contact me if you require additional information.

Very truly yours,
M. DeMatteo Construction Co.

Richard E. Masucci
Project Manager

Enclosure
Cc:     A. O'Neill, MHD
M. Melnik, MHD
MDM – Braintree Office
Job Files



Jane Swift
Governor

James H. Scanlan
Secretary

John Cogliano
Commissioner



M. DeMatteo Construction, Co.                    November 26, 2002
131 Messina Drive
Braintree, MA 02184

Subject: Weave Elimination Project
         Contract Number 32211
         Trainee Certification Form

Attn: Richard E. Masucci
      Project Manager

Dear Mr. Masucci:

Attached please find the approved trainee certification form for Mr. Patrick Falvey.
Please feel free to contact me at (413) 584-1611, ext. 278, if you have any questions or
concerns.

Sincerely,

Ann M. O'Neill
Contract Compliance Officer

CC: Miguel Fernandes, Director of Contract Compliance
    John W. Hoey, District Highway Director

No. of Trainees Required: __6__
Trainee Number: _____1_____

# MassHighway
# TRAINEE CERTIFICATION FORM
### (To Be Completed By Proposed Trainee)

CONTRACT #: __32211__          PRIME CONTR. __M. DeMatteo Const__

1. Trainee name: __Patrick L. Fahvey__

2. Address: __PO Box 1211 Greenfield__   Tel. (__413__) __773-9020__

3. Male: __✓__   Female: _____   4. Soc. Sec. #: __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__

5. Ethnic origin: Black ( ) Asian ( ) Hispanic ( ) Native American ( )
   Cape Verdean ( ) Caucasian (✓)

6. Contractor responsible for training: _____M. DeMatteo_____

7. Trainee Craft: __Carpenter__                Total Hours: _____
   If Apprentice:
        Previous hours trained: _____1383_____
        Union affiliation: _____Local 108_____

8. List past 3 years work history: Company, Job Duties and Dates.
   Daniel OConnell
   Day & Zimmerman (NPS)
   Fontaine Bros

9. Have you ever received highway or bridge construction related training? __NO__
   If yes:   Training received: _____
             By whom: _____
             Dates: _____

10. Have you received a copy of your Training Program?   Yes (X) No ( )

I swear, under the pains and penalty of perjury, that the above information is true to the best of my knowledge.

__Patrick L. Fahvey__                          __11-12-02__
Signature of proposed trainee                 Date

__Ann M. O'Neill__                            __11/22/02__
Approved by M.H.D. Office of Civil Rights     Date

Commonwealth of Massachusetts

**MASS/HIGHWAY**

Massachusetts Highway Department

Project No.  602965-01

Exhibit A -4

## DOCUMENT A00801

### SPECIAL PROVISIONS

### SPRINGFIELD

### Federal-Aid Project Number CM-91-1(148)
### Weave Elimination Project on Interstate 91

## THE MINORITY EMPLOYEE PERCENTAGE GOAL TO BE APPLIED TO THIS JOB WILL NOT BE LESS THAN 10% PER TRADE.  THE FEMALE PERCENTAGE GOAL IS 6.9% PER TRADE.

## SCOPE OF WORK

The work to be done under this contract consists of the construction of two (2) entrance ramps and two (2) exit ramps and the widening of local roads adjacent to I-91.  Work consists of unclassified excavation, bridge widening, retaining wall construction, roadway reconstruction, granite curb, cement concrete sidewalk, demolition of existing retaining walls, traffic signal construction, roadway and pedestrian lighting, drainage, guardrail installation, pavement markings, streetscape, landscaping and other incidental work.  The project begins near Main St. in Springfield and extends along Interstate 91 and East/West Columbus Avenue to north of State Street in Springfield.

All work done under this contract shall be in conformance with the Massachusetts Highway Department *1995 Metric Edition Standard Specifications for Highways and Bridges* and the Metric *Supplemental Specifications* dated November 8, 2000; the *1996 Construction and Traffic Standard Details* and the *Supplemental Drawings* dated October 25, 2000; ; *the latest edition of the Manual on Uniform Traffic Control Devices* with revisions; the *1968 Standard Drawings for Traffic Signals and Highway Lighting*; the latest edition of *American Standard for Nursery Stock*; the *Plans* and these *Special Provisions*.

The General Conditions, Supplementary Conditions and Special Provisions shall take precedence over the General Requirements of Division I of the Standard Specifications.

**602965-01**

Exhibit A-5

# UNION REPRESENTATIVE
## Article 14

1. The Local 108 New England Regional Council Representative or other representatives of the Union or Regional Council shall have access to all work areas at all times to conduct Union business when work is being done.

2. Employers shall notify the Local 108 Regional Council Representative of the starting date of all his jobs in the area.

# STEWARDS
## Article 15

1. Upon notification by the contractor of a job starting date, the Local 108 New England Regional Council Representative (when he deems it is necessary to furnish or appoint a steward) will discuss with the contractor who he intends to furnish or appoint for a job or a shop. The steward must be competent to do the work. In the event of a total temporary layoff, the steward will be the first carpenter to be recalled. The Local 108 New England Regional Council Representative shall be notified to recall the steward so that, in case the steward is unavailable to return to the job or shop, a new steward will be assigned by the Local 108 New England Regional Council Representative.

2. Employers or their representatives shall refer all new Carpenters to the Shop Steward before going to work, provided that it not be a condition of employment and provided further that in no way it conflicts with Section 6 of this Article.

3. The Shop Steward may have the right to check all men working on the job, and the dues books of Carpenter Employees at reasonable times.

4. The Shop Steward may see that proper care and attention is given to Carpenter Employees who have either been taken sick or involved in an accident, without loss of time, also to properly care for his tools.

5. The Shop Steward may report immediately to the Local 108 New England Regional Council Representative any violation of this Agreement.

6. The Steward shall have nothing to do with the hiring, firing, referral or supervision.

7. On projects where there are 50 or more carpenter employees, a meeting will be held between the Employer and the Local 108 New England Regional Council Representative to evaluate the duties of the Carpenters' Steward.

8. It is compulsory that the Steward shall work while carpenter work is being done on the job. The Steward shall not be discriminated against or discharged for the performance of his duties as steward.

9. There shall be no non-working Stewards.

10. A Steward will be given two working days notice, prior to his layoff.