```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


*********************************
MICHAEL JOHN GEDEON,              *
    Plaintiff                     *
                                  *
                                  *
                                  *
VS.                               *
                                  *
                                  *
DEMATTEO CONSTRUCTION COMPANY,    *
AND                               *
CARPENTER'S LOCAL UNION #108,     *
    Defendant                     *
*********************************
```

DEPOSITION of **MICHAEL JOHN GEDEON**, called by Counsel on behalf of the **Defendant** pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure, before Donna O'Connor, a Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Law Offices of **Law Offices of Suzanne B. Matthews 742 Washington Street, Canton, Massachusetts 02021, on March 22, 2006,** commencing at **9:00 a.m.**

Donna O'Connor
Donna O'Connor and Associates
45 Oxbow Road, Canton, Massachusetts 02021
(781) 575-8000
Fax (781) 821-5834

**APPEARANCES:**

Representing: Defendant, DeMatteo Construction
Suzanne B. Matthews
Law Offices of Suzanne B. Matthews
742 Washington Street
Canton MA 02021
(781) 828-0989


Representing: Defendant, Carpenter's Local Union #108
Christopher Souris
Krakow & Souris, LLC
225 Friend Street
Boston MA 02114
(617) 723-8443

1  ongoing case right now, I -- I'm not positive of how am I going
2  to get back on the job with the lawsuit that I have. What's --
3  what's going take place.
4      Q.  But if you said he's offered you a job to go back to
5  work now, what's your -- what's going to be your response to
6  that offer?
7      A.  I haven't given it thorough thought.
8      Q.  And do you recall that Mr. Masucci offered you to
9  return to work in December of '05?
10     A.  No.
11     Q.  You don't recall him calling you and offering you a job
12 at that time?
13     A.  Yes --
14     Q.  I'm sorry.  Strike that.  It was in November of '05 ?
15     A.  November.  November.  Exactly.  Yeah, in November '05 -
16 -- to -- November 2nd or so '05, I got a call from him and that
17 the union was trying to reach me.  He didn't have my number.  To
18 call him and whatnot.  I called him, and he offered me a welding
19 job.  And I was working.  And I asked him, "How long is the
20 welding job?"  He says, "It's about a month or two."  And I told
21 him that I'm working now, you know, I'm a carpenter.  I'm not --
22 I'm not a welder.  I'm a carpenter.  If he had a carpenter job,
23 you know, but I'm working.
24     Q.  All right.  Did you do welding for him -- when you did
25 work for DeMatteo Construction, did you do welding at that

13

```
 1   reference to this right to sue letter in paragraph twenty-five,
 2   were you referring to the document you should have in front of
 3   you marked as Exhibit Thirteen?
 4        A.   Can you run that -- ask that question again?
 5        Q.   All right.  If you take a look at paragraph twenty-five
 6   of Exhibit Sixteen, and you make reference to a right to sue
 7   letter that you had received from the EEOC, that you state you
 8   received it by December 2, 2003, are you referring to the
 9   document in front of you marked as Exhibit Thirteen
10        A.   I'm trying -- I'm still trying to get through -- what -
11   - what number did you want?
12        Q.   Paragraph twenty-five.
13        A.   Paragraph twenty-five.  I thought you said sixteen.
14   Okay.  Please just -- could you -- I ask you to re --
15        Q.   It's getting late in the day.  It's difficult for both
16   sides of the table.  When you make reference in paragraph
17   twenty-five to a right to sue letter --
18        A.   Yes.
19        Q.   -- are you referring to the document that you now have
20   in front of you marked as Exhibit Thirteen?
21        A.   Yes.
22        Q.   And that document is dated September 15, 2003?
23        A.   Yes.
24        Q.   Is that correct?  Now, do you have any reason to
25   believe that DeMatteo Construction ever received a copy of the
```

```
 1  document in front of you that's marked as Exhibit Thirteen?
 2       A.   Do I have reason to believe that they received a copy
 3  of that?
 4       Q.   Yes.
 5       A.   I wouldn't say that I have reason to believe that.  I
 6  don't know..  I don't know.
 7       Q.   Okay.
 8       A.   I don't know.
 9       Q.   When you state in paragraph twenty-five -- strike that.
10  This letter was issued by the EEOC September 15th 2003, correct?
11       A.   Yes.
12       Q.   And at the time you received this letter, you were
13  working for DeMatteo Construction?
14       A.   Yes.
15       Q.   And were you -- subsequently to that, were you laid off
16  by DeMatteo Construction?
17       A.   As of to -- what month are you --
18       Q.   Do you recall the dates in which you were laid off by
19  DeMatteo in 2003?
20       A.   Yes.
21       Q.   And what were those dates?
22       A.   Off the back, there were three layoffs.  And they were
23  early -- I don't have it right on my -- I think it was June,
24  October.
25       Q.   All right.  Why don't we look at page two of the
```

15

```
 1  document, Exhibit Sixteen, that you have. Paragraph seventeen.
 2       A.   Sixteen?
 3       Q.   The complaint you filed with the --
 4       A.   Oh, okay.
 5       Q.   Okay. If you look at paragraph seventeen, that says,
 6  "On or about April 21, 2003 you were hired by DeMatteo
 7  Construction," correct?
 8       A.   Yes.
 9       Q.   All right. Paragraph eighteen states that, "In June
10  27, 2003 you were laid off by DeMatteo?"
11       A.   Yes.
12       Q.   Is that correct?
13       A.   Yes.
14       Q.   Paragraph nineteen states that, "In July 21, 2003 you
15  were re-hired by DeMatteo," correct?
16       A.   Yes.
17       Q.   So, the next paragraph, twenty, states, "On or about
18  September 12, 2003 you were again laid off by DeMatteo," is that
19  correct?
20       A.   Yes.
21       Q.   And then it states in -- on paragraph twenty-one, that
22  on October 14, 2003, you were re-hired by DeMatteo?
23       A.   Yes.
24       Q.   Okay. So, at the time you received this right to sue
25  letter, Exhibit Thirteen, you had already been laid off by
```

16

```
 1  DeMatteo Construction, correct?
 2      A.  Yes, in September.
 3      Q.  All right.  And after you received this right to sue
 4  letter, you were again rehired by DeMatteo Construction is that
 5  correct?
 6      A.  Yes.
 7      Q.  I think earlier, in your testimony yesterday, you made
 8  reference to there was some time, I believe it was in May or
 9  June of 2003, that you informed Rich Masucci of DeMatteo
10  Construction that you had filed a charge of discrimination
11  against the union, is that correct?
12      A.  May or June?  I know I did talk to him about filing a
13  complaint with the EEOC against the union, when -- after Simon
14  left.  And I estimated approximately between May or June.
15      Q.  So, in any event, after you informed Rich Masucci of
16  this, you were laid off by DeMatteo Construction in 2003 for
17  lack of work, correct?
18      A.  Yes..  That was the first layoff.
19      Q.  And you were rehired again by them?
20      A.  Yes.
21      Q.  And similarly, after this right to sue letter came out
22  from the EEOC, Exhibit Thirteen, you were again rehired by
23  DeMatteo Construction, correct?
24      A.  Yes.
25      Q.  Now, I believe you testified yesterday, and again
```

19

1  Q. All right. And the person that allegedly did the
2  spitting was who?
3  A. Adam.
4  Q. All right. Now, I'd like to -- you to look at the
5  document in front of marked as Exhibit Number Two, that you've
6  identified as a charge of discrimination that you filed at the
7  MCAD. And the complaint beginning on page four of Exhibit Two.
8  Right here -- this one right here in front of you. If you could
9  show me at any place in that charge of discrimination that you
10 filed with the MCAD, did you mention or identify this alleged
11 issue of spitting by Adam?
12 A. No, I didn't.
13 Q. And why not?
14 A. Because at the time, I chose just to -- just ignore it.
15 Q. And why did you choose to ignore it?
16 A. Because I -- I -- I just thought that, you know, I
17 would just let it be. Just don't even worry about it, like,
18 such as when he talked about my cologne that I was wearing,
19 something smells. And even -- even he was talking to -- to
20 Donny about it. Making that comment to Donny, the black
21 superintendent, right. I -- I thought it was funny, but I -- I
22 never really even make a comment about it..
23 Q. So, you're talking about the oil incident you testified
24 about yesterday, you thought when you heard that comment that it
25 was funny?

1   A.   Yes, because they both were laughing about it.  So I
2   just let it be.  Same as the spitting towards my -- towards my
3   foot.
4       Q.   And you let it go because you didn't think it was as
5   important of an issue?
6       A.   Well, the reason why I let it go, is simply because I
7   just didn't want to, you know, get involved with it.  Just --
8   just like, don't worry about it.  Just let it -- just let it go.
9       Q.   And also, I'd like you to take a --
10      A.   You'd be quite right that, at the time, I didn't think
11  it was something that I wanted to, you know, put -- put into my
12  into my -- address it into my -- because if I had to address
13  everything that had transpired there, it appears to me that, you
14  know, I'm complaining about this, complaining about that, but
15  what I did, basically, the major things that I saw was much more
16  important to me, as jumping on that board and -- and pushing it
17  into me.  Physical stuff that I indicated.
18      Q.   All right.  Similarly, I'd like you to look at the
19  document I think Exhibit Sixteen in front of you, the complaint
20  that you filed in the US District Court, and whether or not you
21  identified or mentioned that alleged spitting incident at all in
22  the complaint you filed in US District Court?
23      A.   I don't think I did mention that.
24      Q.   Why don't you take a look.  Take a moment and take a
25  look.

21

1     A.   Sixteen?

2     Q.   If anywhere you see in that complaint -- yes, Exhibit
3 Sixteen. I'm sorry.

4     A.   And what number?

5     Q.   I'm asking you just to take a look at it. And if
6 there's anywhere in that complaint you raised the issue of the
7 alleged spitting that you testified as to.

8     A.   No.

9     Q.   And you filed this complaint in December of 2004, is
10 that correct?

11     A.   Yes.

12     Q.   And why didn't you include it in your complaint in US
13 District Court?

14     A.   Because I didn't think that it was -- it was important
15 to -- to me at the time.

16     Q.   Okay. I'd like you to take a look at Exhibit Number
17 Five, and I know between yesterday and today you've answered a
18 number of questions about your employment history, I'll try to
19 wrap this up at this point and focus on Exhibit Number Five
20 which you, I believe, testified was -- depicts your work history
21 at least from -- going from -- your union work history going
22 from 1998 through December of '04, is that correct?

23     A.   Yes.

24     Q.   And it shows on this first page of Exhibit Five, or it
25 indicates the last time that you worked any hours for DeMatteo

1    A.   No.

2    Q.   Did you seek any other type or form of work outside of
3    carpentry related work?

4    A.   No..

5    Q.   Now, after you were laid off in January 2003, what if
6    any -- strike that.  December 2003, laid off from DeMatteo, did
7    you make any contact to DeMatteo seeking further employment?

8    A.   I -- I made contact there right through a couple of
9    days before I filed the complaint with MCAD, which was in April
10   -- April I think it was.  Or May, when I filed the initial
11   complaint with MCAD.

12   Q.   Could I see Exhibit Two?  Do you have that there?
13   Well, whatever the date of that was, you contacted -- so we're
14   talking now between December '03, and the date of the MCAD
15   complaint.

16   A.   December '03, there was nobody on the job.

17   Q.   Okay.

18   A.   January, when I saw the three guys working, which was
19   Steve, Adam and Troy.  I contacted Ritchie.  I got a letter from
20   him, and I kept calling him, staying on him, trying to see if I
21   would get called back on the job.  Because the job was going on.
22   These guys, they were always working..  And, all he was telling
23   me is that -- it's just a little bit of work, you know, it's
24   just one wall they're putting up.  And, I think that was it.

25   Q.   And what did he say to you?

```
 1        A.   He said to me that -- nothing yet.  Nothing yet.
 2        Q.   And did you make any effort to contact DeMatteo seeking
 3   employment from them after you filed your complaint with the
 4   MCAD?
 5        A.   After I filed the complaint with the MCAD, I figured
 6   they wouldn't want to see me.  You know, I mean I filed a
 7   complaint against them, you think they want to give me a job?
 8   No, I didn't.
 9        Q.   You never sought any employment from them after that
10   time?
11        A.   No, I didn't.  For me, it would be -- I wouldn't -- for
12   me, I wouldn't have had the chance, knowing that, you know, I
13   filed a complaint against DeMatteo for not, you know, rehiring
14   me when there's work.  And the nature of the complaint that I
15   wouldn't -- I wouldn't get a chance to get it.
16        Q.   So -- but you made no effort?
17        A.   Right.
18        Q.   When you testified that you received somewhere around a
19   hundred thousand dollars in settlement on O'Connell and Sons?
20        A.   Yes.
21        Q.   Did you ever pay taxes on that money?
22        A.   Actually, one of the reasons why my taxes got so high,
23   my IRS, W-2's, because I was fooled on that settlement, that
24   there wouldn't be no taxes to be paid on that -- on that amount.
25   And that -- the way I was fooled is that the party did not
```