FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2006 APR -7 P 12: 14

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| MICHAEL JOHN GEDEON, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| V. ) | Civil Action No.: 04 30162 KPN |
| ) | |
| DEMATTEO CONSTRUCTION ) | |
| COMPANY, AND ) | |
| CARPENTERS LOCAL UNION #108, ) | |
| ) | |
| DEFENDANTS ) | |

**DEFENDANT DEMATTEO CONSTRUCTION COMPANY'S
STATEMENT OF FACTS IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

1. DeMatteo Construction, a general contracting firm based in Braintree, Ma. was awarded a contract by the Massachusetts Highway Department (MHD) to construct certain revisions to the on-ramps and off-ramps to I-91 in the area of Broad Street to State Street in Springfield, MA. ("Springfield Project"). (Affidavit of Richard Masucci attached hereto as Exhibit A).

2. The date of Contract Award was April 10, 2002, and the Notice to Proceed date was May 24, 2002. (Masucci Affidavit Exhibits A-1 and A-2).

3. At all times material hereto, Richard E. Masucci has been employed by DeMatteo Construction as the Project Manger of the Springfield Project. (Masucci Affidavit Exhibit A).

4. As Project Manager Mr. Masucci is responsible for all hiring decisions. (Masucci Exhibit A).

5. As Project Manager, Mr. Masucci is identified to employees as the site contact person for all complaints of discrimination or harassment. (Exhibit A).

6. The contract with MHD requires that DeMatteo Construction provide on-the-job training aimed at developing six (6) full journeymen in the type of trade or job classification involved. (Masucci Affidavit Exhibit Exhibit A-3).

7. Training and upgrading of minorities and women toward journeyman status is a primary objective of the Training Special Program. (Masucci Affidavit Exhibit A-3).

8. The contract with MHD requires that the minority employee percentage goal of not less than 10% and the female percentage goal of 6.9% per trade be applied to the Springfield Project by DeMatteo Construction. (Masucci Affidavit A-4).

9. In accordance with the bargaining agreement between DeMatteo Construction and Local 108, DeMatteo Construction is obligated to hire a Shop Steward appointed by the union. (Masucci Affidavit Exhibit A-5).

10. In accordance with this same bargaining agreement, the Shop Steward shall have nothing to do with the hiring, firing, referral or supervision of employees on the job site. (Masucci Affidavit Exhibit A-5).

11. DeMatteo Construction moved onto the Springfield Project site in June 2002. Shortly thereafter, problems with the design of major elements of the work were realized. The design deficiencies included objections raised by the Springfield Water and Sewer Commission relating to proposed work on East Columbus Avenue. The redesign of significant elements of the work continued throughout the project. Despite DeMatteo Construction's effort to advance the project, and after nearly four years of work on the site, at all times material hereto the project was significantly behind schedule. (Masucci Affidavit Exhibit A-6).

12. As a result of these issues, DeMatteo Construction has maintained a significantly smaller workforce on the Springfield Project than anticipated. (Masucci Affidavit Exhibit A).

13. In his complaint, as it relates to DeMatteo Construction, Mr. Gedeon alleges:

a. Plaintiff sought employment with DeMatteo Construction since March 2002. (Complaint par. 12).

b. Plaintiff filed a complaint against Defendant Carpenters Union with the EEOC in 2002. Investigations were conducted at that time until Spring of 2003. At that time, EEOC issued a right to sue letter giving him until December 2, 2003 to file a discrimination complaint against the Defendant Carpenters Union in this Court. (Complaint par. 15).

c. Plaintiff was one of the first individuals to list his name for employment with DeMatteo Construction to work at its East Columbus Ave job site on March 2003. (Complaint par. 16).

d. On or about April 21, 2003, Plaintiff was hired by DeMatteo Construction without union support, as a minority carpenter in order to meet its minority hiring requirements. (Complaint par. 17)

e. On or about June 27, 2003, Plaintiff was laid off by DeMatteo Construction. (Complaint par. 18).

f. On or about July 21, 2003, Plaintiff was rehired by DeMatteo Construction. (Complaint par. 19).

g. On or about September 12, 2003, Plaintiff was again laid off by DeMatteo Construction. (Complaint par. 20).

h. On or about October 14, 2003, Plaintiff was rehired by DeMatteo Construction. (Complaint par. 21).

i. As a result of the Defendant's, DeMatteo, unlawful conduct and discriminatory conduct and employment practices and violations of Plaintiff's rights protected by federal and state law, Plaintiff was laid off/discharged from his employment with Defendant DeMatteo on or about December 5, 2003. (Complaint par. 22).

j. Plaintiff received a letter dated January 28, 2004 from Defendant DeMatteo stating that plaintiff was being laid off due to lack of work.

k. DeMatteo Construction laid him off due to retaliation of filing a claim of discrimination with the EEOC. The EEOC gave Plaintiff a right to sue letter against

Defendant Carpenters Union. (Complaint par. 25).

I. Since he has filed a the above mentioned EEOC claim Plaintiff has been a victim of the following harassment by DeMatteo Construction:

> 1. DeMatteo construction's foreman Adam deliberately and repeatedly stepped on Plaintiff's foot on the jobsite.
>
> 2. Plaintiff's foreman repeatedly pushed Plaintiff on the jobsite.
>
> 3. The shop steward repeatedly parked his car too close to Plaintiff's driver's side door thereby preventing Plaintiff from entering his car through his driver's door.
>
> 4. Plaintiff has been left to work in the pouring rain while other workers were told to take cover out of the rain.
>
> 5. Plaintiff was subject to "horse play" by DeMatteo Construction's foreman Adam causing Plaintiff to fall into a three or four foot trench on the job site. When Plaintiff reported the incident to DeMatteo Construction's foreman and Defendant Carpenters Union's steward, the response was as if the incident was a funny story. (Complaint par. 25).

j. As a result of reporting these incidents to his shop steward Steven Carrington and Superintendent Richard Masucci, plaintiff has been laid off. (Complaint par. 26).

k. Since being laid off by Defendant DeMatteo, Plaintiff received a letter dated January 28, 2004 indicating that Plaintiff would be rehired in the Spring.

l. Since filing of the MCAD complaint plaintiff has been subjected to the following adverse actions (as they relate to DeMatteo Construction):

> 1. During Plaintiff's employment with DeMatteo Construction he has been continuously harassed by DeMatteo Construction's management and employees because of his race (Black), age (50), and national origin (West Indian).
>
> 2. Defendant Carpenters Union conspired with DeMatteo Construction to retaliate against him for filing prior discriminatory claims against Defendant Carpenters Union;
>
> 3. Plaintiff has been the subject of strong verbal and physical aggression on the job site;
>
> 4. Plaintiff was falsely informed that Defendant DeMatteo Construction would recall Plaintiff back to work in April 2004.
>
> 5. Plaintiff was the subject of "horse play" by Defendant DeMatteo's foreman

causing Plaintiff to fall into a three to four feet trench on the job site. When Plaintiff reported the incident to Defendant DeMatteo's foreman and Defendant Carpenter's Union's steward, the response was as if the incident was a funny story.

6. Plaintiff's job has been filled by a younger white female worker;

7. Plaintiff's job has been filled by a much younger employee; and

8. DeMatteo Construction has refused to hire Plaintiff despite Plaintiff's in person visits and requests to return to work between January 28, 2004 and April 29, 2004.

(Complaint par. 28).

14. Undisputed facts including Plaintiff's testimony at deposition do not support Plaintiff's allegations.

## HIRING PRACTICES
## RACE, NATIONAL ORIGIN, AGE

15. At all times relevant hereto DeMatteo Construction employed a limited number of carpenters for work on the Springfield Project. The carpenters employed included two long term employees, Adam LaVoie and Troy Longacre, and eight new employees, Steven Carrington, Patrick Falvey, Michael Gedeon, Marci Dineen, Eric Headley, William Johnson, Patrick Paul and Michael Sullivan. (Masucci Affidavit Exhibit A, Employee Profile Summary Exhibit A-7).

16. At all times relevant hereto these carpenters were laid off, rehired and transferred on numerous dates as follows:

|  | Hire/Rehire/Transfer | Layoff |
|---|---|---|
| Adam LaVoie<br>Foreman, white<br>Age: 43 | 10/28/02 | 12/19/03 |
|  | 1/19/04 | 2/27/04 |
|  | 3/15/04 | 12/24/04 |
|  | 3/28/05 | 9/9/05<br>(resigned) |

| | | |
|---|---|---|
| Troy Longacre<br>Journeyman, white<br>Age: 39 | 4/21/03 | 6/27/03 |
| | 7/14/03 | 9/12/03 |
| | 10/06/03 | 12/05/03 |
| | 1/19/04 | 2/27/04 |
| | 3/15/04 | 12/23/04 |
| | 4/27/05 | 12/16/05<br>(assigned to Braintree, MA) |
| | 3/6/06 | |
| Steven Carrington<br>Journeyman<br>Shop Steward, white<br>Age: 30 | 1/21/03 | 6/27/03 |
| | 7/14/03 | 12/19/03 |
| | 1/19/03 | 2/27/04 |
| | 3/15/04 | 6/14/06<br>(reassigned by local 108) |
| | 8/23/04<br>(returned as Steward) | |
| | 12/23/04 | |
| Patrick Falvey<br>Apprentice/Trainee<br>White, Age: 51 | 11/12/02 | 11/22/02 |
| | 1/21/03 | 6/27/03 |
| | 7/14/03 | 9/12/03 |
| | 10/06/03 | 12/05/03 |
| | 5/17/04 | 12/23/04 |
| | 3/28/05 | 7/8/05 |
| | 9/12/05 | 12/2/05 |

| | | |
|---|---|---|
| Michael Gedeon<br>Journeyman, black<br>Age: 52 | 4/21/03<br>7/14/03<br>10/14/03 | 6/27/03<br>9/12/03<br>12/5/03 |
| Marci Dineen<br>Apprentice/Caucasian<br>Age:35 | 6/14/04<br>4/11/05<br>3/27/06 | 11/12/04<br>6/24/05 |
| Eric Headly<br>Carpenter/Steward/Black<br>Age 48 | 7/14/04 | 8/23/04 |
| William Johnson<br>Carpenter/Steward/Black<br>Age: | 4/28/05<br>3/13/06 | 12/2/05 |
| Patrick Paul<br>Carpenter/pile Driver/<br>Journeyman/Caucasian<br>Age: 43 | 11/7/05 | 12/2/05 |
| Michael Sullivan<br>Carpenter/Journeyman/<br>Caucasian<br>Age: 54 | 4/3/06 | |

(Masucci Affidavit Exhibit A-7).

17. Adam LaVoie a foreman with DeMatteo Construction worked for the company for 14 years. Mr. LaVoie was transferred to the Springfield Project on October 28, 2002. (Masucci Affidavit Exhibit A).

18. Mr. Falvey was hired as a carpenter trainee/apprentice on November 12, 2002. (Masucci Affidavit Exhibit A).

19. Mr. Carrington was appointed by Local 108 as Shop Steward for the Springfield Project and was hired as a journeyman on January 21, 2003. (Masucci Affidavit Exhibit A).

20. Mr. Longacre has worked for DeMatteo Construction since 1999. Mr. Longacre was transferred to the Springfield Project on April 21, 2003. (Masucci Affidavit Exhibit A).

21. Mr. Gedeon was hired as a journeyman on April 21, 2003. Mr. Gedeon had no prior work experience with DeMatteo Construction. (Masucci Affidavit Exhibit A).

22. As indicated above between October 2002 and December 3, 2005, all carpenters were repeatedly laid off and rehired. (Masucci Affidavit Exhibit A-7).

23. Lay offs between June 27, 2003 – December 5, 2003 were not on the basis of race, national origin or age. (Masucci Affidavit Exhibit A, Deposition Transcript of Michael Gedeon Day One "Tr. I", pp. 109 - 114 attached hereto as Exhibit B).

24. All lay offs were the result of lack of work. (Masucci Affidavit Exhibit A, Tr. I, pp. 109 - 114 attached hereto as Exhibit B).

25. Employees were re-hired on the basis of seniority and contractual obligations with MHD and Local 108. (Masucci Affidavit Exhibit A).

26. As work increased in January 2004, DeMatteo re-hired three carpenters: Adam LaVoie, foreman who had been employed by the company of twelve years; Troy Longacre, journeyman who had been employed by the company for approximately five years and Steven Carrington, Shop Steward were re-hired on January 19, 2004. (Masucci Affidavit Exhibit A).

27. On or about January 28, 2004, Mr. Gedeon contacted Mr. Masucci, Project Manager and informed him that he was in the process of applying for a mortgage and requested that Mr. Masucci provide him with a letter indicating his employment history and that he had been laid off as a result of lack of work on the project. (Masucci Affidavit Exhibit A).

28. Mr. Masucci provided Mr. Gedeon with such a letter dated January 28, 2004. (Masucci Affidavit Exhibit A).

29. Messrs. LaVoie, Longacre and Carrington were again laid off on February 27, 2004 and re-hired and laid off on subsequent times thereafter. (Masucci Affidavit Exhibit A).

30. Mr. Gedeon was not similarly situated to Messrs. LaVoie, Carrington and Longacre in terms of qualifications and other differentiating or mitigating circumstances that distinguishes their situations. (Masucci Affidavit Exhibit A).

31. Patrick Falvey, apprentice journeyman was re-hired on May 17, 2004 and subsequently laid off and re-hired on several occasions. (Masucci Affidavit Exhibit A).

32. Mr. Gedeon was not similarly situated to Ms. Falvey in terms of qualifications and other differentiating or mitigating circumstances that distinguish their situations. (Masucci Affidavit Exhibit A).

33. On June 14, 2004, DeMatteo Construction hired a female apprentice carpenter in accordance with the terms of its contract with MHD. (Masucci Affidavit Exhibit A).

34. Mr. Gedeon was not similarly situated to Ms. Dineen in terms of qualifications and other differentiating or mitigating circumstances that distinguish their situations. (Masucci Affidavit Exhibit A).

35. Eric Headley was appointed by Local 108 as Shop Steward for the Springfield Project and was hired as a carpenter on July 14, 2004. (Masucci Affidavit Exhibit A).

36. Mr. Gedeon was not similarly situated to Mr. Headley in terms of qualifications and other differentiating or mitigating circumstances that distinguish their situations. (Masucci Affidavit Exhibit A).

37. Mr. Johnson was appointed by Local 108 as Shop Steward of the Springfield Project

and was hired as a carpenter on April 28, 2005. (Masucci Affidavit Exhibit A).

38. Mr. Gedeon was not similarly situated to Mr. Johnson in terms of qualifications and other differentiating or mitigating circumstances that distinguish their situations. (Masucci Affidavit Exhibit A).

39. Mr. Gedeon was offered continued employment with DeMatteo Construction on November 2, 2005. Mr. Gedeon declined the opportunity to return to work at DeMatteo Construction. Mr. Gedeon informed DeMatteo Construction that he was working elsewhere. (Masucci Affidavit Exhibit A, Deposition Transcript of Michael Gedeon Day Two "Tr. II" p. 9 attached as Exhibit C).

40. Mr. Paul was hired as a journeyman carpenter on November 7, 2005. Mr. Paul was hired to fill the position that Mr. Gedeon was offered on November 2, 2005 but declined to accept. (Masucci Affidavit Exhibit A).

41. In March 2006, Mr. Gedeon was again offered the opportunity to return to work at DeMatteo Construction. Mr. Gedeon accepted the offer of employment and returned to work with DeMatteo Construction on March 27, 2006. (Masucci Affidavit Exhibit A).

42. Mr. Sullivan was hired on April 3, 2006, subsequent to Mr. Gedeon's re-hire.

43. DeMatteo Construction's decision to rehire any of the carpenters rather than Mr. Gedeon was not motivated by race, national origin or age. (Masucci Affidavit Exhibit A).

44. Gedeon alleges that the alleged adverse treatment of him by DeMatteo Construction was the result of the business agent Simon James coming on the job in early summer 2003 and allegedly speaking to the Steward Steven Carrington. (Tr. I, pp 115-116, 156 Exhibit B).

45. Mr. Gedeon did not hear any of the conversation between Mr. James and Mr. Carrington (Tr. I, pp 116-117 Exhibit B).

46. Mr. Gedeon did not see Mr. James speaking to anyone else on this day. (Tr. I, p 117).

47. Mr. Gedeon is unaware of the nature and substance of the conversation between Mr. James and Mr. Carrington. (Tr. I, 117 Exhibit B).

48. Mr. Gedeon alleges that Mr. James came to the job site a second time. Mr. Gedeon did not recall the date and did not see Mr. James speaking to anyone on that day. (Tr.I, p. 117 Exhibit B).

49. Mr. Gedeon alleges that DeMatteo Construction failed to re-hire him after December 5, 2003 in retaliation for his filing of a claim of discrimination against the Local 108. (Tr. I, p. 156, Exhibit B).

50. Mr. Gedeon alleges that DeMatteo Construction had knowledge of a "right to sue" letter that Mr./ Gedeon had received from the EEOC. Mr. Gedeon has no facts to support his allegations that DeMatteo had knowledge of such letter or that such letter influenced any of DeMatteo Construction's employment decisions. (Tr.II pp. 13-14 Exhibit C).

51. In fact, Mr. Gedeon received this "right to sue letter on or about September 15, 2003. (T. II, p 14 Exhibit C). Mr. Gedeon was rehired by DeMatteo Construction on October 14, 2003, subsequent to the issuance of the letter. (Tr. II, pp. 15-16 Exhibit C).

52. When faced with a lay off/re-hire decision, it is DeMatteo Construction's policy to lay off similarly situated employees on the basis of their employment history with the company, i.e., last hired, first laid off. (Masucci Affidavit Exhibit A).

53. In the case at issue, at all times relevant hereto Mr. Gedeon was the last to be hired by DeMatteo Construction. Consistent with company policy Mr. Gedeon was one of the first to be laid off. (Masucci Affidavit Exhibit A).

54. The failure of DeMatteo Construction to re-hire Mr. Gedeon between December 5, 2003 – March 27, 2006 was not based on Mr. Gedeon's race, national origin or age. (Masucci Affidavit Exhibit A, Tr. I, pp. 155-156 Exhibit B).

55. The failure of DeMatteo Construction to re-hire Mr. Gedeon between December 5, 2003 – March 27, 2006 was based on legitimate hiring practices and not in retaliation for Mr. Gedeon filing a claim with EEOC against Local 108. (Masucci Affidavit Exhibit A).

56. Mr. Gedeon did not seek employment from DeMatteo Construction since April 2004. (Tr. II, pp. 29-30).

## HARASSMENT

57. During all times relevant hereto, April 21, 2003 – December 5, 2003, Messrs. Gedeon LaVoie, Longacre, Carrington, Falvey and Masucci were working at the Springfield project. Masucci Affidavit Exhibit A-7).

58. Mr. Gedeon alleges that at some point after the business agent appeared at the work site in or about June 2003, Mr. Gedeon noticed a change in attitude by some of the workers, particularly his foreman, Mr. LaVoie and the job steward, Mr. Carrington. (Tr. I, pp 119-120, Exhibit B).

59. Incidents of harassment identified by Mr. Gedeon in his complaint and at his subsequent deposition include:

> a. DeMatteo construction's foreman Adam deliberately and repeatedly stepped on Plaintiff's foot on the jobsite approximately three times. (Complaint par. 25, Tr. I, p. 133- 134).
>
> b. Plaintiff's foreman repeatedly pushed/bumped into Plaintiff on the jobsite approximately three times. (Complaint par. 25, Tr.I, p 132 Exhibit B).
>
> c. The shop steward repeatedly parked his car too close to Plaintiff's driver's side door thereby preventing Plaintiff from entering his car through his driver's door. (Complaint par. 25, Tr. I, pp 120, 147-148 Exhibit B).

    d. Plaintiff was left to work in the rain with his Caucasian work partner while other workers were allowed to work under cover. (Complaint par. 25, Tr. I, p 136 Exhibit B).

    e. Plaintiff was subject to "horse play" by DeMatteo Construction's foreman Adam causing Plaintiff to fall into a three or four foot trench on the job site. When Plaintiff reported the incident to DeMatteo Construction's foreman and Defendant Carpenters Union's steward, the response was as if the incident was a funny story. (Complaint par. 25, Tr. I pp. 119-120 Exhibit B).

    f. Mr. LaVoie spit in the vicinity of Mr. Gedeon's foot. (Tr. I, pp.134-135 Exhibit B).

    g. Mr. LaVoie made reference to the smell of oil/cologne worn by Mr. Gedeon. (Tr. I, pp 135 – 136 Exhibit B).

    h. It appeared to Mr. Gedeon that Mr. Longacre preferred to work alone and did not want to work with him. (Tr. I, pp 139-140 Exhibit B).

60. On June 16, 2003, Mr. Gedeon met with Mr. Masucci and informed Mr. Masucci that he had filed a complaint with EEOC against Local 108 for discrimination and harassment. (Masucci Affidavit Exhibit A, Tr. I pp. 122-123 Exhibit B).

61. On or about June 16, 2003, Mr. Gedeon spoke to Mr. Masucci about Mr. LaVoie's conduct. (Masucci Affidavit Exhibit A, Tr. I, p. 138 Exhibit B).

62. Mr. Masucci spoke to Mr. LaVoie on June 17, 2003, about Mr. Gedeon's allegations. (Masucci Exhibit A).

63. Mr. Gedeon alleges that he spoke to Mr. Masucci about the alleged stepping on his foot, spitting close to his foot, reference to the cologne and working in the rain. (Tr. I p. 132 Exhibit B).

64. Subsequent to Mr. Gedeon informing Mr. Masucci about these allegations Masucci repeatedly walked the job site and asked Mr. Gedeon, "Is everything all right, Mike?". Mr. Gedeon responded, "I tell him yes." (Tr. I, pp. 138, 147 Exhibit B).

65. After speaking to Mr. Masucci the environment on the job site improved. (Tr. I pp. 138 – 139).

66. At some time Mr. Gedeon allegedly informed Mr. Masucci that Mr. Carrington parked his car to close to his making it difficult to get into the driver's side. (Tr.I, p. 147 Exhibit B).

67. After Mr. Gedeon allegedly spoke to Mr. Masucci about this issue, Mr. Carrington did not park close to Mr. Gedeon's car again. (Tr.I, p. 147 Exhibit B).

68. When questioned about the conduct of a co-worker Mr. Longacre, Mr. Gedeon stated that he hardly worked with Mr. Longacre. (Tr. I, p 139, Exhibit B).

69. Mr. Gedeon testified that Mr. Longacre primarily worked with Mr. Carrington and that he took that to mean that Mr. Longacre did not want to work with him. Mr. Gedeon further testified that on occasion Mr. Longacre would be laughing and appeared to be looking at him. (Tr. I, p. 140, Exhibit B).

70. Mr. Gedeon never spoke to Mr. Masucci about Mr. Longacre's alleged conduct toward him or any other alleged conduct relating to Mr. Carrington. (Masucci Affidavit Exhibit A, Tr. I pp 139-141 Exhibit B).

71. When questioned about the conduct of Mr. Falvey, Mr. Gedeon recalled one incident in which Mr. Gedeon and Mr. Falvey had a disagreement. Mr. Gedeon did not attribute this to harassment. (Tr. I, pp 142 -144, Exhibit B).

72. When questioned about incidents of harassment, Mr. Gedeon testified that all offensive conduct toward him by a representative of DeMatteo Construction was the result of the fact that it had become known to them that he had a claim against the union. (Tr. I, pp. 155-156, Exhibit B).

73. None of the alleged harassing conduct by Mr. Carrington was based on race, national origin, or age. (Tr.I pp. 147-148 Exhibit B).

74. Mr. Gedeon failed to allege sufficient facts to support a claim that Mr. LaVoie's conduct toward him was based on race, national origin or age. (Tr. I, pp 149-151 Exhibit B).

75. Mr. Gedeon failed to disclose sufficient facts to support a claim that Messrs. Longacre or Falvey's conduct toward him was based on race, national origin or age. (Tr. I, pp. 151-154 Exhibit B).

76. All alleged adverse or offensive conduct toward Mr. Gedeon by any representative of DeMatteo Construction was based on the fact that DeMatteo Construction allegedly had knowledge that Mr. Gedeon had filed an EEOC claim against Local 108. (Tr. I, p. 155 Exhibit B).

77. Mr. Gedeon testified that all alleged conduct occurred after the business agent appeared on the job. (Tr. I, p 155. 1, Exhibit B).

78. Mr. Gedeon failed to disclose the alleged "spitting" incident in his initial charge of discrimination filed with the Massachusetts Commission Against Discrimination ("MCAD") because at the time he chose to ignore it. There were other matters more important to him. (Tr.II pp. 19-20 Exhibit C).

79. Mr. Gedeon failed to include the alleged "spitting" incident in the Complaint filed in this action because he didn't think that it was important to him at the time. (Tr. II, p. 21 Exhibit C).

80. Mr. Gedeon did not disclose the alleged cologne incident in his complaint filed at the MCAD because he thought that it was funny. (Tr. II, pp. 19-20 Exhibit C).

Respectfully submitted,
DEMATTEO CONSTRUCTION
COMPANY

By its attorney,

*[signature]*

Suzanne B Matthews, Esq.
BBO #545284
742 Washington Street
P.O. Box 501
Canton, MA 02021
781-828-0989

Dated: April 6, 2005

**CERTIFICATE OF SERVICE**
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by First Class Mail.
Date: 4/7/06  *[signature]*
Suzanne B. Matthews