employment action; and (3) the two were casually linked.  See, <u>Dressler v. Daniel</u>, 315 F.3d 75, 78 (1ˢᵗ Cir. 2003).

    1. <u>Failure to Re-hire</u>

    Although Mr. Gedeon alleges in his charge of discrimination that at some point he engaged in a protected activity by filing a claim with the EEOC, he has failed to allege sufficient facts to support a finding that a causal connection existed between the protected activity and the adverse employment action.  Gedeon alleges that the alleged adverse treatment of him by DeMatteo Construction was the result of the business agent Simon James ("James") coming on the job in early summer 2003 and allegedly speaking to the Steward Steven Carrington. (Statement of Facts par. 45). Gedeon did not hear any of the conversation between James and Carrington. (Statement of Facts par. 46). Gedeon did not see James speaking to anyone else on this day. (Statement of Facts par. 46).  Gedeon is unaware of the nature and substance of the conversation between James and Carrington. (Statement of Facts par. 48).  Gedeon alleges that James came to the job site a second time. (Statement of Facts par. 49).  Gedeon did not recall the date and did not see James speaking to anyone on that day.  (Statement of Facts par. 49).

    Gedeon further alleges that DeMatteo Construction failed to re-hire him after December 5, 2003 in retaliation for his filing of a claim of discrimination against the Local 108.  (Statement of Facts par. 50).  In support of this position, Gedeon alleges that DeMatteo Construction had knowledge of a "right to sue" letter that Mr. Gedeon had received from the EEOC. (Statement of Facts par. 51). Mr. Gedeon offers no facts to support his allegations that DeMatteo had knowledge of such letter or that such letter influenced any of DeMatteo Construction's employment decisions. (Statement of Facts par. 51).  In fact, Gedeon received this "right to sue" letter on or about September 15, 2003. (Statement of Facts par. 52).  Gedeon was rehired by

16

DeMatteo Construction on October 14, 2003, subsequent to the issuance of the letter. (Statement of Facts par. 52).

For the reasons set forth more fully above, Gedeon has failed to set forth a *prima facie* case in that the positions for which he sought employment were not filled by similarly situated employees.

Assuming *arguendo* Mr. Gedeon is able to established a *prima facie* claim of retaliation, his claim is without merit. Once the employee has established a prima facie case of retaliation, the burden of production again shifts to the employer to articulate and produce credible evidence to support a legitimate, nondiscriminatory reason for its action. Mole v. University of Massachusetts, 442 Mass. 522 (2004). On June 27, 2003, eleven days after Gedeon informed DeMatteo Construction of his protected activity Gedeon as well as Carrington, Longacre and Falvey were laid off because of lack of work. (Statement of Facts pars. 17 and 25). They were each rehired on July 14, 2003. (Statement of Facts pars. 17). Gedeon as well as Longacre and Falvey were again laid off on September 12, 2003 and rehired on October 6, 2003. (Statement of Facts pars. 17 and 25). Similarly, on December 5, 2003 these same employees were once again laid off for lack of work. (Statement of Facts pars. 16 and 24).

As set forth more fully above, the failure of DeMatteo Construction to re-hire Gedeon between December 5, 2003 – March 27, 2006 was based on legitimate hiring practices and not in retaliation for Gedeon filing a claim with EEOC against Local 108. (Statement of Facts par. 56). The facts surrounding Mr. Gedeon's lay off of December 5, 2003 and DeMatteo Construction's subsequent failure to rehire him do not support a finding of retaliation.

2. Retaliatory Harassment

A claim of harassment, subjecting a party to a hostile work environment in retaliation for

17

protected activity may be actionable under both Title VII and chapter 151 B. Noviello v. City of Boston, 398 F.3d 76, 91-92 (1st Cir. Mass. 2005). As with all claims of harassment, in order to prevail on a retaliatory hostile work environment claim, Gedeon must show that he was subjected to severe or pervasive harassment that materially altered the conditions of his employment. Id at 92, Faragher v. Boca Raton, 524 U.S. 775, 787, 118 S.Ct. 2275 (1998).Gedeon must show that the offending conduct was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. Faragher, 524 U.S. at 787 (1998).

When dealing with discriminatory harassment, there is seldom, if ever, a defensible purpose for such conduct. Noviello v. City of Boston 398 F.3d at 93. In cases of retaliatory harassment, however, the situation is somewhat different. "The very fact of filing a charge against a coworker will invariably cause tension and result in a less agreeable workplace." Id. A charge of discrimination often results in some co-workers defending the target of the complaint, while others attempt to steer clear of trouble by avoiding both the complainant and the target. Id. Although this situation may be unpleasant, "such behavior should not be seen as contributing to a retaliatory hostile work environment" Id. Commonplace indignities typical of the workplace such as tepid jokes, teasing or aloofness standing alone usually is not enough to support a hostile work environment claim. Noviello, 398 F.3d at 92.

Gedeon alleges that at some point after the business agent appeared at the work site in or about June 2003, Gedeon noticed a change in attitude by some of the workers, particularly his foreman, LaVoie and the job steward, Carrington. (Statement of Facts par. 59). For the reasons set forth above, the actions of Mr. Gedeon has failed to establish a *prima facie* case that the

18

conduct of his co-worker or that of his supervisor were casually connected to his filing of a claim with the EEOC against the union.

Moreover, Gedeon cannot establish a *prima facie* case that the alleged conduct was objectively and subjectively offensive and that Gedeon in fact did perceive it to be so. Incidents of harassment identified by Gedeon in his complaint and at his subsequent deposition include: (a) LaVoie deliberately and stepped on Plaintiff's foot on the jobsite approximately three times ("Stepping Incident"); (b) LaVoie foreman pushed/bumped into Plaintiff on the jobsite approximately three times ("Pushing/Bumping Incident"); (c) Carrington repeatedly parked his car too close to Plaintiff's driver's side door thereby preventing Plaintiff from entering his car through his driver's door ("Parking Incident"); (d) Plaintiff was left to work in the rain with his Caucasian work partner while other workers were allowed to work under cover ("Rain Incident"); (e) Plaintiff was subjected to "horse play" by LaVoie causing Plaintiff to fall into a three or four foot trench on the job site. ("horseplay incident"). (f) LaVoie spit in the vicinity of Mr. Gedeon's foot ("Spitting Incident"); (g) LaVoie made reference to the smell of oil/cologne worn by Mr. Gedeon ("Cologne Incident"); and (h) it appeared to Gedeon that Longacre preferred to work alone and did not want to work with him. ("Longacre Incident"). (Statement of Facts par. 60).

While on first impression the conduct as alleged by Gedeon may be considered objectively offensive, when questioned at the deposition about these incidents the underlying facts do not support a claim of retaliatory harassment.

19

Stepping Incident

Gedeon alleges that LaVoie repeatedly stepped on his foot. When questioned at his deposition Mr. Gedeon testified: "He walked – he walked toward me, right, walk towards me on the job site. And basically on my foot, and he turns around, and he goes the other way." Gedeon testified that this occurred at least three times. (Statement of Facts par. 61 )

Pushing/Bumping Incident

Gedeon alleges that LaVoie repeatedly pushed him or bumped into him on the job site. When questioned at his deposition as to specific incidents of harassment by LaVoie, Gedeon testified: "Well, as far as how many, I don't quite recall, but I know there was a few. When he would walk into me, you know, I'm working, and he'd walk into me. Bump into me. I make it look like it's a joke, and it's not a joke …. It happened at least three – three or more times." (Statement of Facts par.62

Parking Incident

Gedeon alleges that on more than one occasion Carrington parked his car too close to his making it difficult to get into the driver's side. When questioned about the parking incident, Gedeon testified: "my steward, he would park his vehicle right next to my door, so I can't get into my truck on several occasions." (Statement of Facts par. 63    Horseplay

Gedeon alleges that LaVoie engaged in "horseplay" which he found offending. When asked to describe the "horseplay" Gedeon testified: "Jumping on this board, trying to throw me

20

off the board. And eventually I lost my balance and fell in this four foot hole. And I fell – I could have been hurt in there. So that kind of – that kind of environment." (Statement of Facts par. 65)

### Spitting Incident

Gedeon alleges that LaVoie spit in the vicinity of his foot while working on the job site. When questioned Gedeon testified: "while I was working on the job, at the bottom of the ramp, Adam and Troy was working. And, they were down and I was standing – I think I was either putting some nails into a two by four, bracing up – bracing up the wall, and the two of them stood right there working. And he goes an he spits. And he spits right to my foot ….. Two or three inches from my foot…. Troy is laughing. I didn't think it was funny" (Statement of Facts par. 66)

### Cologne Incident

Gedeon alleges that LaVoie entered the room where Gedeon and other workers were sitting and states that "something smells around here". (Statement of Facts par.   P. 135). When questioned Gedeon testified: "But I didn't' pay any attention , cause I have – it's an oil." When questions about the oil Gedeon testified: "it has a very loud smell to it, especially if the wind is blowing… it's a nice oil … but some people can't take – odors like that." (Statement of Facts par.   P. 135-136).

### Rain Incident

Gedeon alleges that he was directed to work in the rain while others were allowed to work under cover. When questioned, Gedeon testified: "He [LaVoie] would just let us stay out there and get wet, and not even say, 'Well, guys to underneath the bridge." (Statement of Facts

21

par. 67)

Longacre Incident

When questioned about the alleged conduct of Longacre, Gedeon stated: "I hardly worked with Troy, because Troy showed me that he – didn't want to work with me. He had this thing about me. .. His partner was mainly Steve Carrington or he wanted to do things by himself. …When I wanted to work with him, help him or something like than, he would kind of like shush me up, like, you know, he – he don't need help"   (Statement of Facts par. 68)

Although DeMatteo Construction denies Plaintiff's allegations, even when viewed in the light most favorable to Plaintiff, there is no evidence that the actions as alleged were in retaliation for Gedeon filing a claim with the EEOC against Local 108.  Moreover, in consideration of the small number of identifiable incidents which Mr. Gedeon constituted harassment, the ambiguous nature of these incidents and the lack of credible evidence to show the incidents were, in fact, retaliatory, this Court, as a matter of law, may find that no determination can be made that Mr. Gedeon suffered harassment and abuse that was sufficiently severe to be actionable.  *See* Cuddyer v. Stop & Shop Supermarket Co., 434 Mass 521, 532 (2001).  Whether the harassment was severe or pervasive "must be answered by reference to 'all circumstances' including the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 18 (1st Cir.2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367 (1993)).  Rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim. Noviello v. City of Boston 398 F.3d 76 (1st Cir. Mass 2005), *See* Mannatt v.

22

Bank of Am., 339 F. 3d 792, 803 (9th Cir. 2003). "The antidiscrimination laws were not enacted to create or enforce a 'general civility code.'" Noviello 398 F.3d at   , quoting, Onacle v. Sundower Offshore Servs., Inc. 523 U.S. 75, 80, 118 S.Ct. 998 (1998).  The sum total of the conduct directed at Gedeon was not sufficiently severe or pervasive that it can be said to have altered the conditions of his employment.  In fact, as evidenced by Gedeon's own testimony it appears that most of the incidents were not even subjectively offensive.

Mr. Gedeon failed to disclose the alleged "spitting" incident in his initial charge of discrimination filed with the Massachusetts Commission Against Discrimination ("MCAD") because at the time he chose to ignore it. (MCAD Complaint attached as Exhibit D).  At his deposition Gedeon testified that there were other matters more important to him. (Tr.II pp. 19-20 Exhibit C).  Gedeon failed to include the alleged "spitting" incident in the Complaint filed in this action. When questioned about this Gedeon testified that he didn't think that it was important to him at the time. (Statement of Facts par. 87)  Gedeon did not disclose the alleged cologne incident in his complaint filed at the MCAD. ( Exhibit D) When questioned Gedeon testified that he didn't include it because he thought that it was funny. (Statement of Facts par. 88).  Gedeon did not allege the pushing/bumping incidents, the stepping incident, the parking incident or the rain incident in his MCAD complaint. ( Exhibit D) DeMatteo Construction contends that these matters were not identified because they either did not occur or they occurred in the regular course of work on a construction job site and were neither objectively nor subjectively offensive.  In fact the only incident alleged by Gedeon in his MCAD complaint was the incident of "horseplay". (Exhibit D).  The fact that Gedeon may have been offended by the foreman's conduct, i.e., one incident of "horseplay" does not warrant a finding of retaliatory harassment.

23

Moreover, the extent of the "horseplay" is questionable. In his complaint filed at the MCAD, Gedeon alleged that he was caused to fall into a four <u>inch</u> trench. (Exhibit D).  In his complaint in this action the depth of the ditch was increased to three to four feet.

   3. <u>Liability</u>

   Once harassment is established liability of the defendant differs under state and federal law depending on whether the alleged harasser was a co-worker or a supervisor of the alleged victim.  Under both federal and state law, where the harassment is by a non-supervisory co-worker, the employer is liable only if the plaintiff can show that the employer "knew or should have known of the charged ..... harassment and failed to implement prompt and appropriate action." <u>Crowley v. L.L. Bean, Inc.</u>, 303 F. 3d 387, 401 (1st Cir. 2002) (*quoting* <u>White b. N.H. Dep't of Corr.</u>, 221 F.3d 254, 261 (1st Cir. 2000).

   Similarly, under Title VII or chapter 151B, when a supervisor creates a hostile work environment, the employer is vicariously liable.  Under Title VII, however, where no tangible employment action is taken an employer may raise an affirmative defense to liability. <u>Arieta-colon v. Wal Mart Puerto Rico, Inc.</u>, 434 F.3d 75, 82 (1st Cir, 2006) (tangible employment action defined as discharge, demotion, undesirable reassignment). See, <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 765, 118 S.Ct. 2257 (1998) (tangible employment action recognizing such defense defined as significant changes in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibility or a decision causing a significant change in benefits).  In order to prevail on its affirmative defense, the employer must show that (1) it "exercised reasonable care to prevent and correct promptly" the harassment and (2) the employee "unreasonably failed to take advantage of any preventive or corrective

24

opportunities provided by the employer to avoid harm otherwise." Ellerth, 524 U.S. at 765, 118 S.Ct. 2257.  This same affirmative defense is not available to defendant under chapter 151B and an employer will be held vicariously liable for the actions of its supervisors. College-Town, div. of Interco, Inc. V. MCAD, 400 Mass. 156, 162-69 (1987).

Gedeon alleges harassment primarily by LaVoie and to a lesser extent by Carrington and Longacre.  It is undisputed that Carrington and Longacre were co-workers of Gedeon and had no supervisory authority over him. (Statement of Facts par. 11 and 17) At some time Gedeon allegedly informed Masucci that Carrington parked his car to close to his making it difficult to get into the driver's side. (Statement of Facts par. 74).  After Gedeon allegedly spoke to Masucci about this issue, Carrington did not park close to Gedeon's car again. (Statement of Facts par. 75).  Gedeon never spoke to Masucci about Mr. Longacre 's alleged conduct toward him or any other alleged conduct relating to Mr. Carrington.  (Statement of Facts 78) Gedeon cannot show that DeMatteo Construction knew or should have know of the charged harassment by co-workers and failed to implement prompt and appropriate action.

It is also undisputed that LaVoie was foreman on the job site exercising limited supervisory authority over Gedeon and other workers. (Statement of Facts par. 18) It is also undisputed, however, on or about June 16, 2003, Gedeon spoke to Masucci about LaVoie's conduct. (Statement of Facts par. 70).  Masucci spoke to LaVoie on June 17, 2003, about Mr. Gedeon's allegations. (Statement of Facts par. 71). Gedeon alleges that he spoke to Masucci about the alleged stepping on his foot, spitting close to his foot, reference to the cologne and working in the rain. (Statement of Facts par 72). Subsequent to Gedeon informing Masucci about these allegations Masucci repeatedly walked the job site and asked Gedeon, "Is everything all right, Mike?"(Statement of Facts par.73).  Gedeon responded, "I tell him yes." (Statement of

25

Facts par. 73). In fact, Gedeon testified that after speaking to Masucci the environment on the job site improved. (Statement of Facts par. 74)

As set forth above, DeMatteo Constructions exercised reasonable care to prevent and promptly correct the alleged harassment. DeMatteo is not liable for LaVoie's conduct pursuant to Title VII.

CONCLUSION

For the reasons set forth more fully above, Defendant, DeMatteo Construction Company requests that this Court issue a judgment in its favor as to all claims set forth by Plaintiff in this matter.

Respectfully submitted,

DEMATTEO CONSTRUCTION
COMPANY

By its attorney,

Suzanne B Matthews, Esq.
BBO #545284
742 Washington Street
P.O. Box 501
Canton, MA  02021
781-828-0989

4/6/06

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by First Class Mail.
Date: 4/7/06
Suzanne B. Matthews

26